Kenneth W. **GUENTHER and Marva Guenther, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 88–7244.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 26, 1989.

Temporarily Remanded Nov. 14, 1989.

Resubmitted Feb. 1, 1991.

Decided July 23, 1991.

Glenn R. Kuykendall, Hanna, Murphy, Jensen & Holloway, Portland, Or., for petitioners-appellants.

Patricia M. Bowen, Tax Div., U.S. Dept. of Justice, Washington, D.C., for respondent-appellee.

Before ALARCON, BRUNETTI and O'SCANNLAIN, Circuit Judges.

PER CURIAM:

We must decide whether ex parte submission of a memorandum by Commissioner's counsel prior to trial in the tax court sufficiently prejudiced the trial judge's disposition of the case to entitle taxpayers to a new trial before a different judge.

I

Taxpayers Kenneth and Marva Guenther, then married, filed joint federal income tax returns for 1978 and 1979. The Internal Revenue Service audited the returns, uncovered alleged errors, and issued a notice of deficiency. The Guenthers filed a petition with the United States Tax Court seeking redetermination. Their matter was scheduled for trial in Portland on the week of June 10, 1986, before (now Chief) Judge Arthur L. Nims III.

On March 13, 1986, the tax court's clerk issued a letter to the parties for the June 10 Portland trial session which included the following instructions:

(4) If oral testimony is to be presented by either party, a Trial Memorandum is to be mailed or delivered to Judge Nims ... by each party in sufficient time to reach him at least 10 days before the call of the Calendar and, except for good cause shown, exchanged by the parties.

This Trial Memorandum should concisely state:

(a) the issues to be submitted to the Court;

(b) the name of each witness and a summary of his expected testimony;

(c) a brief synopsis of the applicable legal principles and principal authorities relied on; and

(d) the nature of any significant evidence problem on which a ruling will be required.

Pursuant to this letter, each party prepared a trial memorandum and mailed it to Judge Nims on May 30, 1986. Only the Guenthers, however, forwarded a copy of their memorandum to opposing counsel. The Commissioner did not provide the Guenthers with its memorandum, apparently for two reasons:

(1) Commissioner's counsel understood the tax court's practice and procedure not to require the exchange of trial memoranda prior to trial in civil fraud cases, and (2) that the "good cause" referenced in the clerk's letter existed here because of the possibility that the disclosure of the government's tactics and strategy might permit the Guenthers to change their story or otherwise manipulate the situation.

The Guenthers moved for disclosure of the Commissioner's Trial Memorandum on June 6, 1986. Immediately before the two-day trial began on June 12, 1986, the motion was denied.

On July 29, 1986, long after trial, the Commissioner's attorney provided the Guenthers with a copy of the Trial Memorandum. The Guenthers thereafter filed a motion for an evidentiary hearing on the Commissioner's ex parte allegations of fact and for sanctions if the Commissioner could not prove those allegations. The motion was denied on September 2, 1986.

Shortly before denying the motion, Judge Nims issued a decision on the merits in favor of the Commissioner. The findings of deficiency and civil fraud penalties imposed by the Internal Revenue Service were sustained. The thirty-eight page decision, dated August 31, 1986, did not mention the ex parte Trial Memorandum.

The Guenthers appealed to this court, both on the merits and with regard to the ex parte communication. Expressing concerns about the due process implications of the ex parte contact, we remanded the matter to the tax court with instructions to hold an evidentiary hearing and to make written findings concerning the content and purpose of the ex parte memorandum. *See Guenther v. Commissioner,* 889 F.2d 882 (9th Cir.1989) (ordering temporary remand).

## II

In response to our order of remand, Judge Nims held an evidentiary hearing and forwarded findings with respect to the issues delineated in our remand order, *see id.* at 885.[1] Our task now is to discern whether the Guenthers were unfairly prejudiced by Judge Nims's receipt and review of the ex parte communication from the Commissioner. *See id.* at 884–85.

## A

The ex parte communication in this case, as it turns out, was a thirty-two page document setting forth the Commissioner's entire view of the case. Fully twelve "issues" are listed, ranging from such minor items as whether the Guenthers failed to report $110 in 1979 interest income to such weighty questions as whether miscellaneous deductions from one year should be reduced by $51,493 and whether the Guenthers are subject to the civil fraud addition to their taxes, *see* I.R.C. § 6653(b).

Some of the matters discussed in the Trial Memorandum are purely procedural, such as which party should present its evidence first, or whether non-party witnesses should be excluded from the courtroom. Other topics are clearly substantive. Throughout the discussion are allegations of misconduct by the Guenthers in the course of discovery, criticisms of anticipated testimony by the Guenthers, and requests that the trial memoranda not be exchanged and that the record be left open for thirty days (ironically, because "traditional notions of fair play and substantial justice apply equally to both parties"). The "facts" of the case are set out in an exquisitely intricate and partisan manner. Finally, there is a discussion of the legal consequences flowing from the asserted facts, including the Guenthers' liability for civil fraud.[2]

When the Guenthers appeared for trial before Judge Nims on June 12, 1986, they had not seen nor (obviously) had the opportunity to respond to a number of allegations made against them ex parte, including that they might present fabricated evidence at trial and would change their story, that they had withheld evidence from the Commissioner and had not complied with discovery rules, and that their daughter (a material witness) would not honor a subpoena and would not be moved by a contempt citation. Although long after trial (and shortly before the court issued its decision) they were able to obtain a copy of the Trial Memorandum and then filed affidavits rebutting some of these charges, it cannot be seriously averred that they had an adequate opportunity to respond to the allegations.

## B

In *Guenther,* we explained that the due process clause of the fifth amendment mandated neutrality in civil proceedings, both in reality and in appearance. *See* 889 F.2d at 884. If the Guenthers were unfairly prejudiced, these rights were infringed. *See id.* Only in light of a "compelling justification" would ex parte communications be tolerated. *See id.* (citing

---

1. We requested findings concerning the text of the memorandum, the mechanics of its delivery to the tax court, the Commissioner's purpose in submitting it, the reason it was not furnished to the Guenthers, the date upon which it was obtained by the Guenthers, and any other matters which the tax court wished to address. *Id.*

2. In contrast to the Commissioner's undertaking, the Guenthers provided the tax court and the Commissioner with a three-page document listing the two basic issues, a brief description of the Guenthers' grievances against the Commissioner, and a witness list.

*United States v. Thompson*, 827 F.2d 1254, 1258–59 (9th Cir.1987)).

Before the remand, we were unable to assess any prejudice to the Guenthers, largely because we had not been provided with a copy of the ex parte communication. *See id.* We noted that the Commissioner's Trial Memorandum had been depicted as describing substantive, as opposed to procedural, areas of the case, which would increase the likelihood of prejudice. *Id.* at 884–85 (distinguishing *United States v. Skulsky*, 786 F.2d 558 (3d Cir.1986)).

■ We now conclude that the Guenthers were indeed prejudiced by the communication. The allegations raised were serious, going both to the merits of the case and to the Guenthers' character generally. And, as we have just indicated, we do not perceive that the Guenthers had an adequate opportunity to rebut the contentions effectively. *See also id.* at 884.

Chief Judge Nims's findings of fact on remand do not dispel our sense that the Guenthers were unfairly prejudiced. Nowhere does Judge Nims indicate that he was not influenced by the Trial Memorandum, nor that he disregarded its more argumentative statements. On the contrary, from the denial of the Guenthers' motion to obtain the Trial Memorandum, we must conclude that Judge Nims gave credence to the Commissioner's ex parte characterization of the Guenthers and to the Commissioner's prediction that they would alter their stories if they learned of the Commissioner's approach to the case.

■ Nor do we find sufficient the proffered explanation for refusing to share the Trial Memorandum with the Guenthers. Judge Nims's findings on remand explain that tax court trial judges customarily required pre-trial memoranda to acquaint themselves with the details of upcoming cases:

> The trial judge expected each party to fully disclose his position in his Trial Memorandum, but in the instant case the impression was gained that [the Guenthers'] counsel was engaged in "stonewalling" and expected to spring one or more surprises at trial. This impression

was based upon the generalized and rather perfunctory nature of [the Guenthers'] Trial Memorandum furnished in response to the Court's request for specific information. By contrast, the Commissioner's Trial Memorandum was extremely and, it must be said in retrospect, unduly detailed.

Order at 4, *Guenther v. Commissioner*, No. 967–84 (T.C. Oct. 4, 1990) (findings of fact on remand from Ninth Circuit). Whatever the accuracy of the prognostication of the Guenthers' trial tactics, this explanation does not justify permitting the Commissioner to present thirty-two pages worth of "extremely" and even "unduly" detailed argument to the trial judge without an effective opportunity for the Guenthers to respond.

A tenet of our adversarial system of justice is that the truth may be panned from the half-truth or fallacy by using trial to explore fully the parties' contentions, rather than to surprise the parties with new theories and charges. However the Guenthers planned to proceed at trial, the adversarial system would afford the Commissioner the opportunity to conduct a complete examination of their stories and to expose any newly invented fraud. The ex parte contact countenanced by the trial court demonstrated a lack of faith in and commitment to our adversarial system of judgment; we will not approve the tax court's move toward a more inquisitorial proceeding. *See Thompson*, 827 F.2d at 1258–59 ("ex parte proceedings are anathema in our system of justice").

## C

As this and our previous published order in *Guenther* attest, the danger of prejudice to a party is great whenever ex parte contacts between judge and opposing litigant are permitted. As we noted in our previous order, the tax court rules themselves prohibit such ex parte communications. *See* 889 F.2d at 884 (citing Tax Court Rule of Prac. & Proc. 21(a)). We understand that Chief Judge Nims has subsequently issued a "Standing Pre–Trial Order" which

provides that trial memoranda shall be submitted directly to the court and to the opposing party, apparently without exception, before trial. We trust that we will not again be confronted by an institutionalized due process violation such as that practiced upon the Guenthers.

## III

The violation of the Guenthers' due process right entitles them to a new trial in the tax court. Further, the Guenthers are entitled to be tried before a judge who has not been exposed to ex parte communications from the Commissioner on this matter. *Cf. United States v. Van Griffin*, 874 F.2d 634, 636–37 (9th Cir.1989).[3] The tax court shall reassign this case for trial before a different judge. Because of our disposition of this case, we do not reach the tax law issues raised in the appeal.

REVERSED and REMANDED.

**3.** In *Van Griffin,* the magistrate possessing an ex parte communication (a witness's report) was not disqualified for bias only because he did not read the report, and because the defendant undoubtedly would have been convicted whether or not the magistrate had read the ex parte document.