**ALEXANDER SHOKAI, INC.; Edward Alexander; Estelle Alexander, Petitioners–Appellants,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent–Appellee.**

No. 93–70101.

United States Court of Appeals, Ninth Circuit.·

Argued and Submitted June 8, 1994.

Decided Sept. 2, 1994.

---

Ronald K. Van Wert, Newport Beach, CA, for petitioners-appellants.

Sara S. Holderness, Tax Div., U.S. Dept. of Justice, Washington, DC, for respondent-appellee.

Before: FARRIS, O'SCANNLAIN and TROTT, Circuit Judges.

FARRIS, Circuit Judge:

Taxpayers Alexander Shokai, Inc., Edward Alexander and Estelle Alexander appeal the decision of the tax court denying them a redetermination of approximately $2 million in back taxes and penalties asserted by the Commissioner. The tax court had jurisdiction under 26 U.S.C. §§ 6213, 6214 and 7442. We have jurisdiction pursuant to 26 U.S.C. § 7482, and we affirm.

## I. Facts

In the 1960's, Gosen Co., Ltd., a Japanese manufacturer of tennis strings, granted Edward Alexander the right to sell its string as a wholesaler in the United States. The business began in the home of Mr. Alexander and his wife, Estelle Alexander. In the 1970's the business was incorporated under the name E. Alexander, Inc. (EAI), a California corporation. Mr. Alexander was the sole stockholder of EAI.

In the early stages of the business, Mrs. Alexander performed various duties for EAI. After an office assistant was hired in the late 1970's, Mrs. Alexander's duties were sharply curtailed. She nevertheless received a salary

averaging $36,000 per year in 1980, 1981 and 1982. The salary payments were deducted from EAI's income.

In 1979, Gosen agreed to pay EAI a 10% commission on all sales made by Gosen to EAI and to all foreign customers of EAI.[1] A currency exchange agreement was also entered into between EAI and Gosen. Pursuant to this agreement, if the exchange rate of yen to dollars fluctuated by a certain amount from the time Gosen billed EAI to the time EAI paid Gosen, Gosen agreed to repay that amount to EAI.

Gosen and Mr. Alexander also entered into an oral agreement that if the Japanese National Tax Administration ("JNTA") disallowed Gosen a deduction for any payment made to Mr. Alexander pursuant to the Gosen agreements, he would be required to personally repay Gosen. The JNTA completed an audit of Gosen in 1984, at which time it allowed Gosen deductions for the payments it had made to Mr. Alexander.

Although the written agreements were between EAI and Gosen, the commission and currency fluctuation payments (the Gosen payments) were made directly to a Japanese account owned by Mr. Alexander. Between March 4, 1980 and February 28, 1984, Gosen paid Mr. Alexander $944,269.22 pursuant to the commission and currency exchange agreements. From 1980 to 1983, Mr. Alexander withdrew $565,551 from the account to pay for traveling expenses while in Japan and to deposit into his personal bank accounts in the United States.

Mr. Alexander described the Gosen payments to his friend and retired accountant, Kenneth Bartelt. According to Mr. Alexander, Kenneth Bartelt advised him that the payments would not be taxable in the United States unless brought into the United States. Kenneth Bartelt's son, Edward Bartelt, was employed to prepare EAI's and the Alexanders' federal income tax returns. Mr. Alexander did not inform Edward Bartelt of the Gosen agreements or payments.

None of Gosen's payments to Mr. Alexander were deposited into EAI's corporate bank account or recorded on EAI's books. None of the payments were reported as income on Mr. Alexander or EAI's federal income tax returns for the 1980–1983 tax years.

After completing its audit of Gosen in 1984, the JNTA notified the IRS of the existence of the Gosen agreements, the Gosen payments and Mr. Alexander's Japanese bank account. After an IRS investigation had begun, Mr. Alexander met with Edward Bartelt and some other financial advisers. They concluded that the Gosen payments had not accrued as income until the JNTA had finished its 1984 audit because, until then, Mr. Alexander had the contingent obligation to repay Gosen in the event the JNTA disallowed the deductions. Alexander Shokai, Inc., a California corporation, was formed in 1982 with Mr. Alexander as its sole owner. In 1984, EAI and Alexander Shokai, Inc. merged, with Alexander Shokai, Inc. remaining as the surviving corporation. Alexander Shokai, Inc. reported the income from the Gosen payments on its 1984 income tax return. Mr. and Mrs. Alexander reported the income from the Gosen payments on their 1984 joint federal income tax return as well.

In 1989, the IRS issued a notice of deficiency to Alexander Shokai, Inc., as successor to EAI. The IRS claimed that EAI had received unreported income from Gosen and that the $36,000 salary paid to Mrs. Alexander from 1980–1982 was improperly deducted. The IRS also maintained that EAI was liable for additions to tax for tax fraud (1980–1983), 26 U.S.C. § 6653(b), and substantially understating income (1982–1983), 26 U.S.C. § 6651(a).

The IRS sent separate notices of deficiency to Mr. and Mrs. Alexander. It determined that the Gosen payments were gross receipts of EAI which had been diverted by Mr. Alexander for his own use and maintained that Mr. Alexander was liable for additions to tax for substantially understating

---

1. The agreement was amended in 1980. The amendment provided that the 10% sales commission established by the 1979 agreement was to be segregated into a 5% sales commission and a 5% advertising expense reimbursement fee. The tax court found that the amount received for advertising reimbursement was, in substance, a 5% commission payment.

income (1982–1983) and for tax fraud (1980–1983). Mrs. Alexander was not implicated in the alleged tax fraud.

·The tax court agreed with the Commissioner that the Gosen payments constituted gross receipts of EAI which had been diverted by Mr. Alexander for personal use. The tax court ruled that both EAI and Mr. Alexander were liable for substantially underreporting income and tax fraud (Mr. Alexander's fraud was imputed to EAI). Mrs. Alexander was jointly and severally liable for Mr. Alexander's penalties pursuant to 26 U.S.C. § 6013(d)(3). The tax court determined that EAI was not entitled to deduct the $36,000 salary payments to Mrs. Alexander .from 1980–1982.

## II. The Ex Parte Communications

■ Taxpayers argue that the tax court should have granted their motion for a new trial because improper ex parte communications took place between Commissioner's counsel and the tax court. We review facts that may have deprived Taxpayers of a fair trial de novo. *United States v. Milner,* 962 F.2d 908 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 614, 121 L.Ed.2d 548 (1992). We have held that ex parte communications will be tolerated only in light of a "compelling justification." *Guenther v. Commissioner,* 939 F.2d 758, 760 (9th Cir.1991). To determine whether Taxpayers' due process rights were violated, we must determine whether Taxpayers were "unfairly prejudiced" by the ex parte communications. *Id.*

The ex parte communications Taxpayers complain of occurred on December 10, 1990 during a pretrial calendar call hearing. The only item noticed to be heard was a third party motion to quash a subpoena served by the Commissioner. Taxpayers' counsel was excused from attending the hearing.

Some of the discussions at the hearing related to the motion to quash. Those discussions were not improper because Taxpayers opted not to attend the hearing knowing that the tax court would rule on that motion.

However, after the tax court had ruled on the motion to quash, it allowed the Commissioner's counsel to file several documents, including (1) a motion in limine, (2) an opposition to Taxpayers' motion in limine, and (3) a motion to compel document production. In the absence of Taxpayers' counsel, the tax court and the Commissioner's counsel proceeded to discuss the merits of the documents that were filed. The tax court also inquired as to the status of the Commissioner's deposition of Yutaka Takashima, Gosen's president. The Commissioner's counsel responded that he felt as though he was being "stonewalled" by Gosen. Finally, the Commissioner's counsel informed the tax court that he was having serious problems reaching factual stipulations with Taxpayers' counsel. The tax court expressly stated that it would not make any rulings until Taxpayers' counsel could be heard.

■ We have carefully reviewed the record. What should have been limited to a hearing on the motion to quash a subpoena turned into a discussion of the merits of the case. The ex parte communications were improper. We must determine whether Taxpayers were "unfairly prejudiced."

In *Guenther,* the Commissioner's counsel filed a 32 page memorandum with the tax court without serving it on or disclosing it to taxpayers' counsel. The memorandum was highly partisan, alleging misconduct on the part of taxpayers and criticizing taxpayers' anticipated trial testimony. *See Guenther,* 939 F.2d at 760. We held that taxpayers were unfairly prejudiced because (1) "[t]he allegations raised [in the memorandum] were serious, going both to the merits of the case and to the Guenthers' character generally" and (2) the Guenthers did not have "an adequate opportunity to rebut the contentions effectively." *Id.* at 761.

The communications in this case were less egregious than those in *Guenther.* Taxpayers were served with every document filed with the tax court in their absence. The tax court expressly stated it would not rule on any of the motions until Taxpayers had a chance to respond. Taxpayers had an adequate opportunity to respond at trial. Our review of the trial transcript convinces us that the ex parte communications did not taint the trial. Although the ex parte com-

munications were improper, we find that Taxpayers were not unfairly prejudiced.

## III. Attacks on Taxpayers' Counsel

Taxpayers contend that the tax court and Commissioner's counsel improperly attacked the integrity of Taxpayers' counsel. They argue that the tax court should have exercised more control over Commissioner's counsel. They also point to numerous adverse rulings by the tax court as evidence that the judge had become "an advocate" for the Commissioner.

■ The manner in which a judge conducts a trial is reviewed under an abuse of discretion standard. *Hansen v. Commissioner*, 820 F.2d 1464, 1467 (9th Cir.1987). "[A] clear and precise showing of prejudice must be made to demonstrate judicial misconduct, particularly in noncriminal trials." *Id.* None of the incidents to which Taxpayers refer establish judicial misconduct.

## IV. Claim of Right Doctrine

■ Taxpayers argue that the tax court erred in holding that the "claim of right" doctrine applied to the Gosen payments. Instead, Taxpayers contend, the tax court should have applied the "complete dominion" test set forth in *Commissioner v. Indianapolis Power & Light Co.*, 493 U.S. 203, 110 S.Ct. 589, 107 L.Ed.2d 591 (1990). Whether the "complete dominion" test or the "claim of right" doctrine applies is a question of law reviewed de novo. *Pacific First Fed. Sav. Bank v. Commissioner*, 961 F.2d 800, 803 (9th Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 209, 121 L.Ed.2d 150 (1992).

In *Indianapolis Power*, the Court was faced with the issue of whether utility companies that required deposits of their less creditworthy customers had to report those deposits as income. The Court ruled that the deposits were more similar to loans, and thus not reportable as income. The Court reasoned that "[t]he customer who submits a deposit to the utility, like [a] lender ... retains the right to insist upon repayment in cash ... and the utility therefore acquires no unfettered 'dominion' over the money at the time of receipt." *Indianapolis Power*, 493

U.S. at 212, 110 S.Ct. at 595. It was in the context of distinguishing deposits from advance payments for goods and services that the Court stated that "the crucial point is not whether [the taxpayer's] use of the funds is unconstrained during some interim period. The key is whether the taxpayer has some guarantee that he will be allowed to keep the money." *Id.* at 210, 110 S.Ct. at 593.

■ The "claim of right" doctrine, was set forth in *North American Oil Consolidated v. Burnet*, 286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197 (1932):

> If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to [report], even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent.

*See also Butchko v. Commissioner*, 638 F.2d 1214, 1216 n. 5 (9th Cir.1981). A taxpayer receives a payment under a claim of right when he treats the payment "as belonging to him." *Healy v. Commissioner*, 345 U.S. 278, 282, 73 S.Ct. 671, 674, 97 L.Ed. 1007 (1953). If the taxpayer is eventually required to repay all or part of the earnings in a later year, he is entitled to an offsetting deduction for the year in which repayment is made. *North American Oil*, 286 U.S. at 424, 52 S.Ct. at 615.

*Indianapolis Power* is readily distinguishable. In *Indianapolis Power*, the utilities had an absolute obligation to repay the deposits to their customers if a request for repayment was made; thus, the Commissioner could not have argued that the utility companies held the deposits under a "claim of right." In contrast, the Gosen payments bore no resemblance to loans or deposits. Gosen could demand repayment of the Gosen payments from Taxpayers *only if* the JNTA had disallowed the deductions. The tax court correctly ruled that the "claim of right" doctrine was applicable.

Having concluded that the tax court applied the correct test, we review its conclusion that the Gosen payments were held under a "claim of right" for abuse of discretion.

*Cf. Commissioner v. Duberstein,* 363 U.S. 278, 291, 80 S.Ct. 1190, 1199–1200, 4 L.Ed.2d 1218 (1960) (reviewing court's conclusion of what constituted a "gift" for clear error). We find none. Mr. Alexander freely withdrew money from the account and treated it as his own. The Gosen payments were held under a claim of right from 1980–1983.

### V. Tax Fraud

■ Taxpayers argue that the tax court erred in finding that the underpayment of taxes was due to tax fraud. The tax court's finding of fraud is factual and will be reversed only if we are "left with the definite and firm conviction ... that there is no clear and convincing evidence of fraud." *Bradford v. Commissioner,* 796 F.2d 303, 307 (9th Cir. 1986) (citations omitted).

#### A. Finding fraud where an issue is not free from doubt

■ Taxpayers argue that a finding of fraud is precluded because they made a good faith, non-frivolous argument regarding the applicability of the "complete dominion" test. Taxpayers rely on *United States v. Dahlstrom,* 713 F.2d 1423, 1428 (9th Cir.1983), *cert. denied,* 466 U.S. 980, 104 S.Ct. 2363, 80 L.Ed.2d 835 (1984), a criminal tax fraud case, where we held that "when the law ... is highly debatable, a defendant—actually or imputedly—lacks the requisite intent to violate it."

Taxpayers' reliance on *Dahlstrom* is misplaced. Taxpayers have pointed to no evidence in the record showing that they relied on the "complete dominion" test during the years that they failed to report the Gosen payments. Instead, Mr. Alexander testified that he relied on Kenneth Bartelt's advice that the Gosen payments were not taxable until they were brought into the United States (though he did not heed that advice). Taxpayers may not use an unsuccessful legal argument that they first devised in response to the IRS investigation to negate fraudulent intent they might have had from 1980–1983. *Cf. Zell v. Commissioner,* 763 F.2d 1139, 1142 (10th Cir.1985) ("Fraud means actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax

*believed* to be owing." (emphasis added) (quotations omitted)).

#### B. Subjective v. objective test

Taxpayers next contend that the tax court applied an objective rather than subjective standard as to the reasonableness of Mr. Alexander's belief that no taxes were due. We reject the argument. Nothing in the record indicates that the tax court applied an "objective" standard. The tax court specifically stated that the Commissioner had to show by "clear and convincing evidence that the taxpayer intended to evade paying taxes *known* to be owing by conduct *intended* to conceal, mislead, or otherwise prevent the collection of taxes." (emphasis added).

#### C. Reliance on financial advisers

■ Taxpayers contend that they relied on the advice of their financial advisers, Kenneth and Edward Bartelt. A taxpayer may rebut the Commissioner's proof of fraud by showing that he relied in good faith on his accountant's advice after "*full* disclosure of tax related information." *United States v. Claiborne,* 765 F.2d 784, 798 (9th Cir.1985) (emphasis added), *cert. denied,* 475 U.S. 1120, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986).

■ Kenneth Bartelt advised Taxpayers that the Gosen payments were not taxable until they were brought to the United States. We agree with the tax court that Mr. Alexander did not rely on that advice because he failed to report the Gosen payments as income even after he had partially transferred them to accounts in the United States.

■ Taxpayers also contend that they properly relied on Edward Bartelt's expertise in preparing their tax returns. Although Taxpayers made their U.S. bank records available to Edward Bartelt, they failed to disclose the Gosen payments, the Gosen agreements or the oral contingent agreement to him. Taxpayer's failure to make a "full" disclosure precludes their reliance on Edward Bartelt's preparation of their tax returns. *See Claiborne,* 765 F.2d at 798 ("[A] defendant cannot shift his responsibility for deficiencies to an accountant if the defendant has withheld vital information....").

## D. Clear and convincing evidence of fraud

Taxpayers assert that there was no clear and convincing evidence of tax fraud. Because tax fraud is rarely established by direct evidence, fraudulent intent can be inferred from circumstantial evidence. *See Bradford,* 796 F.2d at 307. Badges of fraud include understatements of income, failure to maintain adequate records, implausible or inconsistent explanations of behavior, concealment of assets, and failure to cooperate with tax authorities. *Id.*

The record supports the tax court's finding of numerous badges of fraud. Taxpayers underreported their income during the years in question. In addition, the tax court properly found that Taxpayers failed to keep records of the amounts earned or received from Gosen.

The tax court's conclusion that Mr. Alexander attempted to conceal the existence of the Gosen payments also finds ample support in the record. Mr. Alexander failed to inform Mrs. Alexander, Edward Bartelt, and EAI's corporate staff of the existence of the Gosen payments and the Japanese account. Only Gosen and Kenneth Bartelt were aware of the existence of the account. Further, when Mr. Alexander transferred money from the account to the United States he did so by withdrawing cashier's checks in the amount of $4,000 and sending them in separate envelopes to his home. A U.S. Customs regulation requires persons bringing sums of money in excess of $5,000 into the United States to fill out a disclosure form. *See* 31 U.S.C. § 5316. The tax court could properly infer that Mr. Alexander intended to conceal the transfers by avoiding U.S. Customs disclosure requirements.

The tax court also correctly concluded that Mr. Alexander had provided inconsistent explanations for his behavior. Mr. Alexander's reliance on Kenneth Bartelt's advice that the Gosen payments were not taxable if they remained in Japan was inconsistent with Mr. Alexander's failure to report the payments once he had transferred them to the United States.

## E. Factors disproving fraud

Taxpayers argue that the tax court disregarded numerous factors tending to disprove fraud. For example, Mr. Alexander maintains that he cooperated with the IRS. The record contradicts this assertion. For example, Freeman Harris, an IRS agent assigned to investigate the case, testified that Mr. Alexander informed him in July 1984 that the "majority" of the Gosen payments remained in Japan and that the income from the Gosen payments had been reported. Neither of these statements were accurate.

Mr. Alexander also contends that he provided leads to the IRS for the purpose of verifying his account of what took place, and that the IRS failed to follow up on those leads as required by *Edelson v. Commissioner,* 829 F.2d 828, 831 (9th Cir.1987). Mr. Alexander fails to specify what those leads were, and how they would have exonerated him. The other factors he lists as tending to "disprove" fraud are not relevant with respect to whether he committed tax fraud in the United States.

## VI. Exclusion of Taxpayers' expert from courtroom

Taxpayers argue that the tax court erred in excluding their accounting expert from the trial. We review the tax court's decision to exclude a witness from the courtroom under Tax Court Rule 145 (which mirrors Fed.R.Evid. 615) for abuse of discretion. *Cf. Breneman v. Kennecott Corp.,* 799 F.2d 470, 472 (9th Cir.1986) (decision *not* to exclude witness from trial under Fed.R.Evid. 615 reviewed for abuse of discretion). An erroneous decision is cause for reversal only if it is prejudicial. *Id.* at 474.

Tax Court Rule 145 does not authorize exclusion of "a person whose presence is shown by a party to be essential to the presentation of such party's cause." *Id.* Taxpayers have not shown that the presence of their expert was necessary for presentation of their case, nor have they established prejudice.

## VII. Evidentiary rulings

Taxpayers argue that the tax court erred in (1) failing to admit the deposition of Yutaka Takashima, Gosen's president, (2) failing to consider documentary proof that Edward Bartelt had been provided with Taxpayers' U.S. bank account balances, (3) failing to consider the testimony of their expert Michael Christianson, (4) admitting a letter from the JNTA to the Commissioner and (5) failing to rule on the admissibility of various exhibits.

■ Evidentiary rulings are reviewed for abuse of discretion. *Hudspeth v. Commissioner*, 914 F.2d 1207, 1213 (9th Cir.1990). Erroneous evidentiary rulings do not warrant reversal in the absence of prejudice. *Roberts v. College of the Desert*, 870 F.2d 1411, 1418 (9th Cir.1988).

We have carefully reviewed the record and find no abuse of discretion. Taxpayers have also failed to establish prejudice.

## VIII. Mrs. Alexander's salary

■ Taxpayers assert that it was permissible for EAI to pay Mrs. Alexander for past services and that the tax court erred in disallowing deductions for her salary. The tax court's finding that the $36,000 salary was not reasonable compensation is a factual finding reviewed for clear error. *Nor-Cal Adjusters v. Commissioner*, 503 F.2d 359, 362 (9th Cir.1974).

"It is permissible to pay and deduct compensation for services performed in prior years," *Elliotts, Inc. v. Commissioner*, 716 F.2d 1241, 1248 (9th Cir.1983), so long as the compensation is reasonable in amount, *Lewis and Taylor, Inc. v. Commissioner*, 447 F.2d 1074, 1078 (9th Cir.1971). Taxpayers appear to contend that since Mrs. Alexander's replacement was paid more than she was, the salary payments made to her during the years at issue for her prior services were reasonable. However, the fact that EAI paid Mrs. Alexander's replacement a higher salary does not mean that Mrs. Alexander was undercompensated while she was working. The tax court did not clearly err in concluding that Taxpayers had "failed to prove that Mrs. Alexander performed any services to the corporation during or prior to the years in issue that would justify characterizing the payments" as compensation for services rendered.

## IX. Diversion of income

■ Taxpayers argue that Alexander Shokai, Inc. (EAI's successor corporation) is not liable for taxes or penalties stemming from the Gosen payments because the Gosen payments did not constitute corporate income. They argue that Gosen and Mr. Alexander intended that the Gosen payments be outside the range of EAI's corporate transactions. The record supports the tax court's conclusion that the Gosen agreements were between EAI and Gosen, and that Gosen payments should be attributable as income to EAI. Each of the Gosen agreements was entered into between EAI and Gosen, with Mr. Alexander signing the agreements in his capacity as president of EAI. The commissions were based on sales of tennis string by EAI. Further, EAI's 1983 income tax return noted that all of the income obtained from the Gosen payments constituted corporate income.

■ Taxpayers also argue that Mr. Alexander's fraud cannot be imputed to EAI because he was not acting on behalf of the corporation. *See Asphalt Indus. v. Commissioner*, 384 F.2d 229, 233 (3d Cir.1967). We reject the argument. Mr. Alexander was acting on behalf of, and not against, the interests of EAI. The Gosen agreements were beneficial to both Mr. Alexander and EAI because, by committing tax fraud, Mr. Alexander increased EAI's wealth. *See Ruidoso Racing Ass'n v. Commissioner*, 476 F.2d 502, 507 (10th Cir.1973). Even though Mr. Alexander diverted EAI's corporate income for his own use, such a diversion was not "antagonistic" to EAI since Mr. Alexander was taking money that would otherwise have been available to him as dividends. *See American Lithofold Corp. v. Commissioner*, 55 T.C. 904, 926, 1971 WL 2493 (1971).

Mr. Alexander's fraud was properly imputed to EAI.

## X. Reconciliation of fraud penalty with Commissioner's determination that Mrs. Alexander failed to participate in the fraud

Taxpayers argue that the assessment of fraud penalties against EAI was inconsistent with the Commissioner's finding that Mrs. Alexander did not commit tax fraud. In *Asphalt Indus.*, the Third Circuit refused to impute the fraud of a 50% stockholder to a corporation where the other 50% stockholder was innocent of any wrongdoing. The court reasoned that the innocent stockholder was as much defrauded as the government, "and it would be piling additional injury upon an innocent stockholder to require that the corporation in which he invested should bear the burden of assessments based upon the fraud" of the other stockholder. 384 F.2d at 235. Although Mr. Alexander was the record owner of 100% of the stock, Taxpayers argue that under California community property law, Mrs. Alexander had an equal interest in Mr. Alexander's stock. *See* Cal.Civ.Code §§ 5105, 5110. Thus, they conclude, Mrs. Alexander was an "innocent" stockholder of EAI, and, under the doctrine of *Asphalt Indus.*, fraud should not be imputed to EAI.

We have not adopted the "innocent stockholder" defense in this circuit, and we decline to do so now. Taxpayers' expansive interpretation of *Asphalt Indus.* would encourage tax fraud by the 100% record owners of closed corporations who happen to be married. We are persuaded by the reasoning of the Tenth Circuit in *Ruidoso Racing Ass'n*, where the court explained that "[p]rotection of innocent shareholders ... may not be an appropriate concern so long as the other elements necessary to impute fraud to the corporation are present." 476 F.2d at 507. We hold that the "innocent stockholder" defense articulated in *Asphalt Indus.* is not applicable where one individual is the record owner of 100% of the taxpayer corporation's stock.[2]

2. We leave for another day the question of whether the innocent stockholder defense may be

## XI. Liability of Alexander Shokai, Inc.

Finally, Taxpayers contend that Alexander Shokai, Inc. should not incur liability for any additions to tax or penalties because it is the successor corporation to EAI. Section 6901 of the Internal Revenue Code provides that the income tax liability of a transferor of property is assessed against the transferee "in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred." 26 U.S.C. § 6901(a)(1). Contrary to Taxpayers' contention, a transferee's income tax liability includes any additions or penalties that have been assessed against the transferor. *See* 26 U.S.C. § 6662(a)(2) ("Any reference to 'tax' imposed by this title shall be deemed also to refer to additions to the tax, additional amounts, and penalties provided by this chapter."); *Lee Optical Associated Cos. Pension Plan & Trust v. Commissioner*, T.C.Memo 1989–152, 1989 WL 32237 (1989) (transferee liable for deficiencies and additions to tax for fraud under § 6901(a)).

AFFIRMED.

invoked under more appropriate circumstances.