52 F.3d 336
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, for the Use of J. HUIZAR AND SONS,
INC., Plaintiff-Appellee,
v.
ENVIRONMENTAL CONSTRUCTION COMPANY; Frank Munoz, dba
Environmental Construction Company, Defendants-Appellants.
 Nos. 93-16914, 94-15434.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 15, 1995.
Decided April 13, 1995.
 
 Before: REINHARDT, THOMPSON, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 We affirm this Miller Act judgment. Though arguably some of the decisions could have been made the other way, the factual determinations were not clearly erroneous, and the others were not an abuse of discretion.
 
 I. Evidence Supporting Judgment
 
 3
 We review the findings of fact for clear error, which requires a definite and firm conviction that a mistake has been committed. United States v. Ramos, 923 F.2d 1346, 1356 (9th Cir.1991). Environmental, the general contractor, claimed that the subcontractor had not performed properly. The subcontractor, Huizar, claimed that it had performed as directed. There was evidence both ways. The judge was persuaded of the subcontractor's position, and adequate evidence supported her decision.
 
 
 4
 Both sides agreed that the original plans were of little use, because what was found underground differed so greatly from what was shown in the drawings. Should Huizar have done more exploratory work to avoid delay, or did Huizar properly comply with the general contractor's and the Coast Guard's directions? The court found that Huizar properly complied with directions:
 
 
 5
 9. It was physically impossible for J. Huizar to install the waterline according to the original bid set of plans....
 
 
 6
 14. J. Huizar was directed to stop work upon encountering obstructions and await further directions from Environmental Construction Company.
 
 
 7
 15. J. Huizar and Sons performed all exploratory work that it was directed to perform by Environmental Construction Company. When J. Huizar was directed to explore, that exploration occurred; when J. Huizar was not directed to explore, no exploration occurred....
 
 
 8
 17. Environmental Construction Company never directed Huizar and Sons to explore for obstructions or to use an exploratory backhoe at the site.
 
 
 9
 Evidence supported the district court's findings. Mr. Huizar testified that the custom in the industry was for the general, not the sub, to take the initiative to direct exploratory work and obtain change orders from the government:
 
 
 10
 Q. Based on your knowledge and experience in the industry, whose responsibility was it to determine whether or not it was appropriate for you to have an exploratory backhoe on the site?
 
 
 11
 A. Environmental.
 
 
 12
 Q. And whose responsibility, based on your experience in the industry, was it to obtain a change order from the Coast Guard to add to the scope of the contract work, exploratory backhoe work?
 
 
 13
 A. Environmental.
 
 
 14
 Q. And Environmental never obtained a change order from the Coast Guard for this work to be done?
 
 
 15
 A. No, they didn't.
 
 
 16
 Q. And you were never ordered by Environmental to do exploratory work up in front, were you?
 
 
 17
 A. No, I wasn't.
 
 
 18
 [SER 89-90]
 
 
 19
 The Coast Guard's project manager testified that there was no provision in the contract requiring Huizar to do exploratory work, nor was there anything in the original plans and specifications that would lead Mr. Huizar to include the cost of an exploratory backhoe into his original bid. [SER 136] A Coast Guard inspector on the jobsite confirmed that the Coast Guard required Mr. Huizar to obtain approval or instruction as to how to negotiate an obstruction that was not indicated on the plans. [SER 114]
 
 
 20
 Mr. Huizar testified that the duplicative work he did was at the Coast Guard's direction:
 
 
 21
 Q. Why did you lay and then relay pipe that you had already laid?
 
 
 22
 A. That was upon direction of the Coast Guard.
 
 
 23
 Q. So it wasn't because of any changes that you independently made, it was because the Coast Guard was directing you to make those changes?
 
 
 24
 A. Yes, sir. That's correct.
 
 
 25
 Q. Did Environmental ever direct you to make any of those changes?
 
 
 26
 A. No, sir.
 
 
 27
 Q. It was always the Coast Guard?
 
 
 28
 A. Yes.
 
 
 29
 [SER 91].
 
 
 30
 Mr. Munoz, who owned and operated the general, conceded that he did not tell Huizar to use more men and did not obtain a change order from the Coast Guard for Huizar to obtain more men and equipment. [SER 105-06]
 
 
 31
 Although Environmental presented conflicting evidence, we are not left with a definite and firm conviction that the district court's findings are mistaken.
 
 II. Exclusion of Exhibit H
 
 32
 Environmental next argues that the district court improperly excluded Exhibit H. This exhibit was intended to prove the general's expenses for doing the work the sub allegedly should have done after the general fired the sub. It is a multi-page spreadsheet indexing original documents, with the original documents attached. Some of the supporting documents look like contemporaneously kept business records, such as the "foreman's daily cost report." Some are invoices from materialmen. Some are checks to suppliers of materials and services. The spreadsheet itself appears to be a compilation prepared for trial to show the totals.
 
 
 33
 On appeal, the general argues that the spreadsheet should have been admitted as a summary under Federal Rule of Evidence 1006. But at trial, the general did not purport to be offering the spreadsheet and documents as a Rule 1006 summary. The judge therefore had no occasion to determine whether the requirements for admission were complied with. In particular, the foundation requirements of availability for inspection at a reasonable time and place might or might not have been put at issue, had a proper proffer been made. Also, the proponent of a Rule 1006 summary must bear the burden of establishing foundation for the admissibility of the supporting materials. United States v. Johnson, 594 F.2d 1253, 1255 (9th Cir.1979).
 
 
 34
 At trial, the sub's attorney objected to the exhibit as hearsay. The court agreed. The general's attorney responded that it was nevertheless admissible as a "business record" pursuant to Federal Rule of Evidence 803(6). [SER 164-65] The district court's exclusion of evidence under the hearsay rule is reviewed for abuse of discretion. United States v. Arias-Villanueva, 998 F.2d 1491, 1503 (9th Cir.1993).
 
 
 35
 The general did not lay any foundation to show that the spreadsheet itself was prepared "at or near the time," was "kept in the course of a regularly conducted business activity," and so forth. The general wanted the court to admit the spreadsheet as evidence. So far as the testimony showed, it was not a contemporaneous business record, but was prepared subsequently for purposes of litigation. Nor did the general establish that all 140 documents on which Mrs. Munoz relied to prepare the spreadsheet were contemporaneous, prepared by a person with knowledge, kept in the course of a regularly conducted business activity, whether it was the regular practice of the business to make these records, and so forth, as required for foundation under Rule 803(6). The judge admitted the exhibit conditionally, in case the general's lawyer might be able to fill in the foundation from other witnesses, but decided after the trial was over that the foundation had not been supplied.
 
 
 36
 The judge did not abuse her discretion. No foundation whatsoever was laid for admission of the spreadsheet as a business record. The district judge reasonably rejected the general's implication that it was unreasonable to require a foundation for the 140 underlying documents. This is typically done by grouping them, and asking the appropriate person, "for documents x through y, who prepared these, when and for what?" The answer might be, "These are invoices we received in the ordinary course of business from the suppliers, which I put in the file," or "these are checks which I wrote to pay the suppliers in the ordinary course of business at the time that their invoices came in." If the documents are indeed proper business records, the foundation may be laid quickly and easily.
 
 III. Trial Time Limitations
 
 37
 Environmental's third argument is that the court erred by holding Environmental to the time limits imposed at the beginning of trial. The trial court's allotment of time for argument is reviewed for abuse of discretion. Barnard v. United States, 342 F.2d 309, 321 (9th Cir.1965).
 
 
 38
 Time limitations were discussed pretrial and at the start of trial. The general's lawyer estimated that she needed "four to five" days to present her case, and got four, which was reasonable. [SER 9-10] Her problem arose when she could not get exhibit H into evidence. This was the central part of her damages case, but by the time she got to it, she had less than half an hour left:
 
 
 39
 The Court: The plaintiff has 45 minutes left and the defendant has 28 minutes left. 28 minutes for the defendant, 45 for the plaintiff.
 
 
 40
 Ms. Haug: Your Honor, at this time I'd like to ask if I could be afforded an additional 30 minutes. I had no way of anticipating I was going to spend an hour and 15 minutes on one objection. Mr. Lipton [Huizar's attorney] has taken up a lot of my time and I feel that to a very large extent his objections are calculated so as to use up my time.
 
 
 41
 The Court: At this point I'm not inclined to grant any additional time. One of your responsibilities in preparing a case is to anticipate objections and accommodate them. If you had been prepared to accommodate it wouldn't have taken as much time. That's attributable to you, the objection and request is denied. You have 28 minutes and 45 minutes, at which point we will recess for the evening.
 
 
 42
 [SER 187-88]
 
 
 43
 The problem was seen by the judge as Ms. Haug's fault, for not getting to Exhibit H until the very end of trial, and then not having her foundation ready to present in short order to overcome the other side's objection. Perhaps it might also have been seen, as Ms. Haug suggested, as a trivial objection purposely stretched out to eat up her time, so that she should have been given another half hour to compensate.
 
 
 44
 Time limits have always been one of the devices judges may use in their discretion to "avoid needless consumption of time." Federal Rule of Evidence 611(a)(2). Indeed, subsequent to this trial, Federal Rule of Civil Procedure 16 has been amended expressly to provide for use of this device. Fed.R.Civ.P. 16(c)(15). The judge has to use discretion in their enforcement, and did here. Although she might have shown a little more flexibility here, we cannot say she abused her discretion.
 
 IV. Sequestration of Witnesses
 
 45
 Environmental argues that the district court should not have excluded Linda Munoz from the courtroom during the presentation of other witnesses' testimony. Mrs. Munoz was the general's bookkeeper and the owner's wife. We review for abuse of discretion. Alexander Shokai, Inc. v. Commissioner of IRS, 34 F.3d 1480, 1487 (9th Cir.1994). The exclusion was under Federal Rule of Evidence 615.
 
 
 46
 The general does not argue that Mrs. Munoz was "a party" under Rule 615(1). The argument appears to be that because the sub's lawyer did not object to Mrs. Munoz's presence at depositions, the sub had waived its right to invoke the exclusionary rule at trial. The general also argues that Mrs. Munoz was "essential to the presentation of the party's cause," under Rule 615(3), because of her knowledge of the general's books.
 
 
 47
 Rule 615 is ordinarily invoked at trial, regardless of what has taken place at depositions. We have no rule that the exclusionary rule cannot be invoked against a person whose presence was not objected to at a deposition. Presence of additional persons might sometimes be useful to the parties as a way of educating themselves about the case in order to determine their settlement positions, and, if the matter were brought to the court's attention, discretion might be exercised differently in different cases. Inference of a waiver is not reasonable. The general was permitted to have Mr. Munoz and Shaun Clark in the courtroom, apparently under Rules 615(1) and 615(3). The judge had discretion to decide that two people, one of the a 615(3) designee, were enough, and did not abuse her discretion. As Wigmore said, "[t]he expedient of sequestration is (next to cross-examination) one of the greatest engines that the skill of man has ever invented for the detection of liars in a court of justice...." 6 Wigmore, Evidence Sec. 1838 (Chadbourn rev. 1976).
 
 
 48
 V. Findings Premised on Actions Permitted by Miller Act
 
 
 49
 The general argues that the court erroneously relied on the manner in which the general paid, and withheld payment from, suppliers as a reason why its firing of the sub was wrongful. The general does not identify which finding or conclusion is objected to. We cannot find it.
 
 VI. Quantum Meruit
 
 50
 The general argues that the district court erred in awarding quantum meruit damages for the sub's extra work.
 
 
 51
 Quantum meruit claims are permitted under the Miller Act. United States ex rel. Leno v. Summit Constr. Co., 892 F.2d 788, 791 (9th Cir.1989). Quantum meruit permits a "plaintiff who has rendered services benefiting the defendant [to] recover the reasonable value of those services when necessary to prevent unjust enrichment." Carolco Television, Inc. v. Nat'l Broadcasting Co., 963 F.2d 1269, 1272 (9th Cir.1992).
 
 
 52
 The district court concluded that Huizar was entitled to quantum meruit recovery because he performed extra work and furnished extra materials at Environmental's request with the understanding that he would be paid. Mr. Munoz testified that Huizar was directed to do the extra work and keep track of his time, and he would be compensated later. [SER 104] Quantum meruit damages were appropriate in these circumstances.
 
 VII. Interest on Quantum Meruit
 
 53
 The general argues that the sub should not have been awarded prejudgment interest on the quantum meruit damages. No such award was made. Conclusion of Law No. 8 in the district court's order states that "[a]s of the date that judgment is entered, plaintiff is entitled to interest in the amount of 10% per annum on damages arising from the quantum meruit claims."
 
 VIII. Attorneys' Fees
 
 54
 The general argues that the district court erred in affirming the magistrate's order awarding attorneys' fees on an hourly basis. Environmental did not object to the magistrate's recommendations within ten days after service of the recommendations as required by N.D.Cal. Local Rule 410(2)(b). Failure to object to a magistrate's findings of fact waives the right to contest those findings on appeal. Britt v. Simi Valley Unified Sch. Dist., 708 F.2d 452, 454 (9th Cir.1983). This argument was therefore waived.
 
 
 55
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3