In re: **RENOVIZOR'S, INC., Debtor.**

**California State Board of Equalization, Appellee,**

v.

**Renovizor's Inc., aka The Hang–Ups aka The Rose Collection, Debtor–Appellant.**

**No. 99–15827.**

United States Court of Appeals, Ninth Circuit.

Filed Jan. 3, 2001

Before: B. FLETCHER, O'SCANNLAIN, and GOULD, Circuit Judges.

### ORDER

We certify to the California Supreme Court the question set forth in Part III of this order.

We stay further proceedings in this court pending receipt of the answer to the certified question. This case is withdrawn from submission until further order of this court. If the California Supreme Court accepts the certified question, the parties shall file a joint report six months after date of acceptance and every six months thereafter, advising us of the status of the proceeding.

I

Pursuant to California Rule of Court 29.5, a panel of the United States Court of Appeals for the Ninth Circuit, before which this appeal is pending, certifies to the California Supreme Court a question of law concerning the proper burden of proof for civil tax fraud under California law. The decisions of the State of Califor-

nia provide no controlling precedent regarding the certified question, and the answer to the question may be determinative of this appeal. We respectfully request that the California Supreme Court answer the certified question presented below. Our phrasing of the issue is not meant to restrict the court's consideration of the case. We agree to follow the answer provided by the California Supreme Court. If the California Supreme Court declines certification, we will resolve the issue according to our perception of California law.

## II

Renovizor's, Inc., ("Renovizor's") is deemed the petitioner in this request because it is appealing the district court's ruling on this issue. The caption of the case is:

In re: RENOVIZOR'S, Inc. Debtor

California State Board of Equalization; Appellee

v.

Renovizor's Inc., aka The Hang–Ups aka The Rose Collection, Debtor—Appellant

\* \* \*

The names and addresses of counsel for the parties are as follows:

David M. Kirsch, Ten Almaden Boulevard, Suite 1000, San Jose, California, 95113–2233, for Debtor–Appellant.

Bill Lockyer, Attorney General; Randall P. Borcherding, Supervising Deputy Attorney General; Julian O. Standen, Deputy Attorney General, Office of the Attorney General, 455 Golden Gate Avenue, Room 6200, San Francisco, California, 94102–3664, for Appellee.

## III

The question of law to be answered is:

Under California law, must civil tax fraud be proved by clear and convincing evidence or instead by a preponderance of the evidence?

## IV

The statement of facts is as follows:

Renovizor's was an interior decorating and remodeling company that sold decorating products and provided residential remodeling services. Renovizor's incorporated in late 1984, commenced business in the second quarter of 1985, and ceased operations in 1994.

In June 1992, the California State Board of Equalization ("SBE") commenced an audit of the sales tax returns filed by Renovizor's from April 1, 1989 to March 31, 1992. The SBE later expanded the audit to include the period from April 1, 1985 to March 31, 1989.

An audit report admitted into evidence at trial forms the main basis for the SBE's tax assessment and its finding that Renovizor's engaged in civil tax fraud by consistently under-reporting its income. The SBE auditor, Ms. Ross ("Ross"), indicated that her progress was made difficult by the lack of documentation and records from Renovizor's. The audit report indicates that no work papers were attached to the sales tax returns and that sales invoices that were provided were impossible to reconcile with the returns. According to the audit report, "[c]ompleted sales invoices were filed in customer files, bookcases, vendor files, desks and, from a conversation with store personal [sic], the owners and/or employees' homes." The audit report finds that Renovizor's failed to produce any general ledgers, sales journals, or "dailies." The report also discloses the existence of a separate file for cash receipts and payments, which Renovizor's had not disclosed. The audit report states that Renovizor's "indicated that during the audit period some records had been stolen along with a computer."

The absence of records made it impossible directly to compare the company's sales as reported on sales tax returns with the actual sales. Thus, the audit used a "mark-up" derived from a close analysis of available business records in the third

quarter of 1992 to estimate actual sales over the 1989–1992 period. Having estimated actual sales for 1989–1992, the SBE calculated a tax assessment based on the under-reporting of income. Using the assumption that Renovizor's had under-reported income during 1985–1988 in the same proportion as it did in 1989–1992, the SBE also calculated an assessment of tax liability for the earlier time period.

In addition to the tax assessment, Ross recommended imposing an additional twenty-five percent fraud penalty. Her recommendation was based, in part, on a fax Renovizor's sent to Lane Financial ("Lane fax"). The cover sheet of the Lane fax set forth a gross sales figure of almost $1 million in 1991 (compared to Renovizor's reported sales of $172,121). Attached to the Lane fax was an unaudited financial statement dated June 30, 1990, indicating "Retail Taxable Sales" of $405,372 for the preceding twelve months (compared to Renovizor's reported taxable sales of $102,018 for the same period). On July 16, 1993, the SBE's assessment became final.

Renovizor's ceased operations and filed for Chapter 11 protection on June 22, 1994. Renovizor's bankruptcy case was subsequently converted to a Chapter 7 proceeding. The SBE filed a proof of claim for $442,194.18, including the sales tax deficiency, fraud penalty, and interest.

Renovizor's objected to the SBE's claim. The bankruptcy court conducted a trial and published an opinion affirming the SBE tax and fraud claims. *In re Renovizors, Inc.*, 214 B.R. 232 (Bankr.N.D.Cal. 1997). The bankruptcy court concluded: (1) the SBE's assessment for under-reported sales taxes was valid; (2) the SBE must prove fraud by a preponderance of the evidence, not by clear and convincing evidence; and (3) fraud had been proved by a preponderance of the evidence. On October 2, 1997, the bankruptcy court entered its order allowing the SBE's claim in full.

On appeal, the district court affirmed the bankruptcy court in an unpublished order. Renovizor's filed a timely notice of appeal to the Ninth Circuit.

## V

We respectfully submit that the question presented in Part III needs certification for the following reasons:

State law determines the validity of a creditor's claim against a bankrupt estate, including the allocation of the appropriate burden of proof in bankruptcy court. *Grogan v. Garner*, 498 U.S. 279, 283–84, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The SBE must assess a twenty-five percent penalty on a deficiency that is "due to fraud or an intent to evade" the payment of taxes. Cal. Rev. & Tax.Code § 6485 (2000). The bankruptcy court ruled, and the district court affirmed, that preponderance of the evidence was the appropriate standard for civil tax fraud in California. Applying this evidentiary standard, the bankruptcy court determined that civil tax fraud existed for 1985–1992. Renovizor's, however, contends that civil tax fraud must be proved by clear and convincing evidence.

The bankruptcy court stated that the determination of the proper standard of proof "is important to the result" of the case. The court assessed whether the SBE met its evidentiary burden with evidence of "badges of fraud" as described in *Alexander Shokai, Inc. v. Commissioner*, 34 F.3d 1480, 1487 (9th Cir.1994), which applied a clear and convincing standard. Here, the evidence of fraud considered by the bankruptcy court and by the district court is circumstantial; there is no direct evidence establishing an intent by Renovizor's to defraud. The "badges of fraud" cited by the bankruptcy and district courts include consistent under-reporting of taxable income, the Lane fax, implausible and inconsistent stories given during the audit, failure to maintain adequate records, and the existence of a separate, undisclosed drawer for cash sales. Some of this evi-

dence, however, is inapplicable to the 1985–1989 audit period.

The California Supreme Court's authoritative answer "may be determinative" of this issue. Cal. Ct. R. 29.5(a)(2). If the California Supreme Court advises that the proper standard for civil tax fraud requires proof by clear and convincing evidence, we will reverse and remand for further proceedings consistent with this legal standard. It is possible that the evidence would not support a finding of fraud for the 1989–1992 period under the clear and convincing standard. It is also possible that the clear and convincing standard would not permit sustaining the fraud finding for the 1985–1989 period, which was calculated by extrapolating evidence relating to the 1989–1992 period. Possibly the SBE's tax assessment, including the fraud penalty and interest, might be reduced or even eliminated upon remand if the clear and convincing standard applies.

In contrast, if the California Supreme Court advises that the preponderance of evidence standard is applicable in a civil tax fraud case, we will affirm the decision below, having determined that the other issues raised do not require reversal.

The determination of the appropriate standard of proof in California for civil tax fraud is dispositive of our pending decision in this appeal. And we have concluded that California law is not entirely clear as to whether preponderance of the evidence or clear and convincing evidence is necessary to prove civil tax fraud.

*Marchica v. State Board of Equalization,* 107 Cal.App.2d 501, 237 P.2d 725 (1951), a court of appeal decision, does directly address California's burden of proof in civil tax fraud cases. In *Marchica,* the taxpayer sought a refund from the SBE for sales taxes and fraud penalties. In its ruling, the court quoted three federal appellate decisions that used a "clear proof" or "clear and convincing proof" standard for tax fraud. *Id.* at 507–08, 237 P.2d 725.

In contrast, the bankruptcy court here relied on *Liodas v. Sahadi,* 19 Cal.3d 278, 137 Cal.Rptr. 635, 562 P.2d 316 (1977), a decision of the California Supreme Court and a case that deals with civil fraud not tax fraud. In *Liodas,* the California Supreme Court noted that California appellate courts were divided as to the correct standard of proof in civil fraud cases. *Id.* at 287–88, 137 Cal.Rptr. 635, 562 P.2d 316. The court explained that "the decisions calling for a standard of proof by clear and convincing evidence relied heavily on the 'presumption' against fraud and in favor of honesty and fair dealing. . . ." *Id.* at 289, 137 Cal.Rptr. 635, 562 P.2d 316 (footnote omitted). The court concluded that the enactment of the Evidence Code and earlier California Supreme Court cases should have "laid to rest the early belief that civil fraud must be proved by more than a preponderance of the evidence." *Id.* at 289, 137 Cal.Rptr. 635, 562 P.2d 316. Relying on California Evidence Code section 115 ("section 115"), which provides that "[e]xcept as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence," the court held that the preponderance standard applies to issues of fraud in civil cases, unless a statute or relevant case law specifically provides otherwise. *Id.* at 290–91, 137 Cal.Rptr. 635, 562 P.2d 316.

Following *Liodas,* the bankruptcy court concluded that there was no California statute or court decision establishing an exception to the default preponderance standard for civil fraud provided by section 115. The bankruptcy court also relied on *Weiner v. Fleischman,* 54 Cal.3d 476, 286 Cal.Rptr. 40, 816 P.2d 892 (1991)—the only California Supreme Court case interpreting the civil fraud standard with reference to *Liodas* and section 115, but again not dealing with tax fraud. The *Weiner* court distinguished cases imposing civil sanctions—requiring the preponderance standard of proof—from cases where important individual interests such as "termination of parental rights, involuntary com-

mitment, and deportation" were at stake—requiring clear and convincing proof. *Id.* at 487, 286 Cal.Rptr. 40, 816 P.2d 892. The bankruptcy court likened civil tax fraud to the civil sanction line of cases.

Renovizor's argues that *Marchica* should be considered pursuant to section 115 as "otherwise provided by law," and maintains that *Marchica* establishes an exception to the general requirement that civil fraud be proved by a preponderance of the evidence. The bankruptcy court and the district court rejected this contention because *Marchica* predated both section 115 and *Liodas.* Also *Marchica* is the decision of only one court of appeal in California.

Renovizor's argues that the bankruptcy court erred by failing to consider, pursuant to section 115, state and federal case law and California administrative decisions, all of which require a clear and convincing evidence standard for civil tax fraud. To interpret the phrase "provided by law" in section 115, the district court referred to California Evidence Code section 160 ("section 160"), which defines "law" as "constitutional, statutory, and decisional law." The district court concluded that section 160 does not permit courts to rely on the law of other jurisdictions or California administrative decisions. If recourse to other state's laws were proper, the court reasoned, "California litigants could argue for the application of standards used in other jurisdictions every time those standards would prove more of an advantage than the general preponderance standard applicable to California civil cases." The district court affirmed the bankruptcy court, concluding that because "[n]o alternative standard is 'otherwise provided' by any statute or appellate decision since *Liodas,*" the preponderance of the evidence standard should apply to civil tax fraud in this case.

If the California Supreme Court deems it appropriate to consider other state and federal law, such law would support application of the clear and convincing standard here. Renovizor's cites federal tax court opinions and rules, federal appellate decisions (including *Shokai,* 34 F.3d at 1487), and law from fifteen states, all of which require clear and convincing proof for tax fraud.

It is possible that the command and rationale of *Liodas* governing civil fraud applies to civil tax fraud as well, answering the question of the applicable standard with simplicity. However the Supreme Court of California has not ruled directly on the issue.

In addition, any assessment is complicated by the fact that California administrative agency determinations apparently apply the clear and convincing standard of proof in cases involving civil tax fraud. Renovizor's cites seven cases from the SBE appellate panel decided since *Liodas* that apply the clear and convincing evidence standard of proof to civil tax fraud. *See Appeal of Castillo,* 92–SBE–020 (1992); *Appeal of Adickes,* 90–SBE–102 (1990); *Appeal of Armstrong,* 85–SBE–146 (1985); *Appeal of Bellamy,* 85–SBE–002 (1985); *Appeal of Lopez,* 83–SBE–110 (1983); *Appeal of Hutchinson,* 82–SBE–121 (1982); *Appeal of Wickman,* 1981 WL 11741 (1981). None of these cases mentions *Liodas.*

Renovizor's has not provided support from California case law for its contention that pursuant to section 160, "decisional law" refers to administrative determinations. However, even if California "decisional law" does not include administrative agency decisions, we perceive a significant practical impact for California citizens in the determination of the proper standard of proof. We hesitate to announce a rule of California law that may be contrary to a rule consistently applied by a California administrative agency responsible for pursuing civil tax fraud.

Given the apparent conflict between *Marchica,* although not a Supreme Court case, and *Liodas* and also the administrative practice inconsistent with *Liodas,* we

conclude that the proper standard of proof for civil tax fraud in California is unsettled and California law provides no controlling precedent. In another context, the California Supreme Court has stated that the determination of the applicable standards of proof "reflects the weight of the private and public interests affected as well as a societal judgment about how the risk of error should be distributed between the parties." *Cynthia D. v. Superior Court,* 5 Cal.4th 242, 251, 19 Cal.Rptr.2d 698, 702, 851 P.2d 1307 (1993) (citing *Santosky v. Kramer,* 455 U.S. 745, 754–755, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). The California Supreme Court is in a better position than a federal court to make these policy choices and to assess the impact of administrative decisions.

## VI

The Clerk of Court is hereby directed to transmit forthwith. to the California Supreme Court, under official seal of the Ninth Circuit, a copy of this order and request for certification and all relevant briefs and excerpts of record pursuant to California Rule of Court 29.5(c).

IT IS SO ORDERED.