FELIX AFLALO AND ARLETTE AFLALO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Aflalo v. Commissioner
Docket No. 14712-92
United States Tax Court
T.C. Memo 1994-596; 1994 Tax Ct. Memo LEXIS 605; 68 T.C.M. (CCH) 1343; December 6, 1994, Filed *605 Decision will be entered under Rule 155. Felix Aflalo and Arlette Aflalo, pro sese. For respondent: Linette Angelastro and Marilyn Devin. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Addition to Tax
Year
Deficiency
[1]Sec. 6653(b) 1977
$ 22,342
$ 11,171
1978
68,868
34,434
1979
60,694
30,347
1980
37,257
18,629
After concessions, the issues remaining for decision are: (1) Whether petitioners had unreported income for the taxable years at issue as determined and reconstructed by respondent using the net worth method; (2) whether Mr. Aflalo is liable for additions to tax for fraud; (3) whether, absent a finding of fraud, Mr. Aflalo is liable for additions to tax for negligence or disregard of rules or regulations; *606 (4) whether Mrs. Aflalo is liable for additions to tax for negligence or disregard of rules or regulations; and (5) whether the statute of limitations had expired with respect to petitioners' 1977 and 1978 taxable years when the notice of deficiency was issued. FINDINGS OF FACT [2]
Petitioners resided in Hollywood, California, at the time the petition in this case was filed. Petitioners, husband and wife, filed joint Federal income tax returns for the taxable years at issue. Mr. Aflalo operated two delicatessens: "Harry's Deli", acquired in 1974, and "Boston Deli", acquired in either 1976 or 1978. Harry's Deli was owned by R.A.F., Inc., and Boston Deli was owned by Boston, Inc. Petitioners, along with one other shareholder, Ralph Phillippo, owned stock in both corporations. From 1978 through 1980, Mrs. Aflalo worked in the delicatessens as a cashier. In 1977, petitioners sold both Tandy and Asamera Oil stock, yet failed to *607 report the sales on their tax returns. In addition, respondent discovered that petitioners' personal expenditures totaled approximately $ 22,442, based primarily on petitioners' bank withdrawals. In 1978, petitioners purchased Ralph Phillippo's interests in the delicatessens by payment of approximately $ 33,000 and $ 52,000 to Mr. Phillippo for his R.A.F., Inc., and Boston, Inc., shares, respectively. Petitioners had three additional unreported stock transactions, with receipts totaling $ 13,662.62. The balance in petitioners' brokerage accounts, in addition to the above sales, had also increased by approximately $ 66,933. Moreover, petitioners purchased a home in Palm Springs, California, for $ 79,000 and a swimming pool for $ 10,500. Petitioners also failed to report certain interest income and dividends received. [3] Their personal expenditures, in 1978, totaled approximately $ 111,734. *608 In 1979, petitioners had nine unreported stock dispositions with total proceeds of $ 105,377.76. Also for 1979, petitioners had unreported dividend income and an increase in their brokerage accounts aggregating $ 46,223, and they made approximately $ 100,016 in personal expenditures. For 1980, petitioners had nine unreported stock dispositions with proceeds totaling $ 35,387.61. They, once again, failed to report dividend income. [4] Petitioners' personal expenditures, in 1980, were approximately $ 7,641. Initially, petitioners were being investigated to determine whether there were criminal tax violations. Mr. Aflalo was later advised that respondent was no longer pursuing a criminal case. In 1984, Internal Revenue Service (IRS) Agent Guy Hoppe was assigned to examine petitioners' civil tax liability. During the 14-month civil examination, petitioners were uncooperative with respondent and refused to provide documents. Due to petitioners' failure to provide information, petitioners' *609 income was reconstructed by means of the net worth method. Respondent's agent aggregated the total value of petitioners' known assets including bank accounts, stock holdings, cash accounts, etc. More specifically, Agent Hoppe used the net worth method to reconstruct petitioners' income because of the lack of records, many unreported stock transactions, cash transactions in the delicatessen businesses, large personal expenditures, and otherwise lavish lifestyle when compared to their reported income. Respondent mailed a statutory notice of deficiency to petitioners on April 8, 1992. Petitioners filed their petition with this Court on June 30, 1992. ULTIMATE FINDINGS OF FACT In addition to their many personal expenditures, which did not result in the acquisition of assets, petitioners' net worth had increased for 1977, 1978, 1979, and 1980 by $ 42,362, $ 28,346, $ 34,453, and $ 84,723, respectively. Consequently, petitioners understated their income for 1977 through 1980 as follows: Taxable income
Taxable income
as originally
as computed by
Unreported
Year
reported
respondent
[5]income 1977
$ 20,620
$ 67,950
$ 47,330
1978
23,989
146,284
122,295
1979
26,558
142,786
116,228
1980
29,354
99,494
70,140
*610 In addition, for each year, petitioners omitted certain other items from their tax return, including, for example, stock sales and dividend income, and, thus, concealed assets (e.g., brokerage accounts). OPINION Respondent's use of the net worth method to determine petitioners' underpayments -- Section 6001 places a duty on taxpayers to keep adequate records so they may file tax returns. Sec. 6001; Norgaard v. Commissioner, 939 F.2d 874, 878 (9th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1989-390. Where, as here, taxpayers have failed to provide adequate records, an indirect method may be used to compute income. Holland v. United States, 348 U.S. 121 (1954). Petitioners bear the burden of proving that the determinations made by respondent in the notice of *611 deficiency are erroneous. Rule 142(a); Cracchiola v. Commissioner, 643 F.2d 1383 (9th Cir. 1981), affg. per curiam T.C. Memo. 1979-3, citing Welch v. Helvering, 290 U.S. 111 (1933). Respondent used the net worth method to determine petitioners' income for the tax years at issue. In a net worth calculation, the total net value of the taxpayer's assets at the beginning of the first taxable year (the "opening net worth") must be established. The taxpayer's net worth is then computed at the beginning and end of each succeeding year under examination, and the difference between the taxpayer's adjusted net assets at the beginning and end of each of the taxable years involved may reflect increases to income. Holland v. United States, supra.
In United States v. Hom Ming Dong, 436 F.2d 1237 (9th Cir. 1971), the Court of Appeals for the Ninth Circuit affirmed a taxpayer's conviction for income tax evasion. In that case, the Commissioner reconstructed the taxpayer's income using the net worth method and focused primarily on the taxpayer's *612 grocery store as being a likely source of income from which to base the net worth calculation. The court held that the trial judge did not err by inferring that the increase in net worth was due to the grocery store's cash flow, because such a business could be a likely source of unreported income. Similarly, petitioners' delicatessens represent a likely source of unreported income. As petitioners noted on brief, "most people do not pay for a pastrami sandwich with a check or credit card." The delicatessens here are likely sources of cash flow and, thus, are sources of income represented by increases to petitioners' net worth. The court in Hom Ming Dong also found that, based on the inadequacy of the taxpayer's business records, it was clear that reconstruction of income by the net worth method was appropriate. Holland v. Commissioner, supra at 125, as cited in United States v. Hom Ming Dong, supra at 1240. Petitioners have offered no evidence or explanations as to which, if any, method of accounting they used. Mr. Aflalo contends that all relevant information was with his former accountant, who is now deceased. Because petitioners *613 have not shown us that the net worth method of income reconstruction was erroneous, we sustain respondent's determination of petitioners' net income for each of the years at issue. Estate of Bartlett v. Commissioner, 22 T.C. 1228, 1232 (1954); see also Larson v. Commissioner, T.C. Memo. 1994-302 (holding that the net worth method was a reasonable method used by the Commissioner). Additions to tax for fraud -- Respondent has the burden of proving, by clear and convincing evidence, that Mr. Aflalo fraudulently intended to evade tax. [6] Sec. 7454(a); Rule 142(b). To meet this burden, respondent must show that petitioner intended to evade taxes known to be owing by conduct intended to mislead, conceal, or prevent tax collection. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Respondent must show (1) that there is an underpayment of tax, and (2) that part of such underpayment is due to fraud. Hebrank v. Commissioner, 81 T.C. 640, 642 (1983). If it is shown that at least part of the underpayment is due to fraud, then the addition to tax will apply to *614 the entire deficiency. Sec. 6653(b). Based on the net worth method discussed above, respondent has shown that there were underpayments of tax in each of the years at issue. Thus, we must decide for each year whether any portion of such underpayments was due to fraud. Hebrank v. Commissioner, supra.
Fraudulent intent is seldom proven by direct evidence; hence, the Courts of Appeals have relied on certain indirect evidence in determining whether or not fraudulent intent existed. These "badges of fraud" include: (1) Understating income; (2) keeping inadequate records; (3) failing to file tax returns; (4) providing implausible or inconsistent explanations of behavior; (5) concealing assets; and (6) failing to cooperate with tax authorities. Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), *615 affg. T.C. Memo. 1984-601. Several of petitioner's activities have provided clear and convincing evidence of fraud. First, although Mr. Aflalo filed the tax returns at issue, the omissions were substantial. Petitioner omitted many stock transactions, dividends, and interest received; despite the fact that some of the omitted dividends remain excluded from income, they were required to be reported. Mr. Aflalo knew that such stock transactions were required to be reported, as evidenced by his and Mrs. Aflalo's including a Schedule D on their 1978 tax return. Moreover, the deficiency amounts are quite substantial as compared to the income actually reported. Next, petitioner did not maintain adequate books or records. Mr. Aflalo never produced any records to substantiate his transactions at trial. Since nothing was offered or produced, we find that they were either inadequate or nonexistent. Petitioner's spending patterns went without explanation. Having reported very little income, Mr. Aflalo was unable to explain how he and Mrs. Aflalo made such lavish personal expenditures, e.g., new cars and a swimming pool, based on his reported income. Through *616 petitioner's cash businesses, he was able to conceal much of the cash that he received. Based on the increases in his brokerage accounts, Mr. Aflalo must have received more income than he reported. In addition, Mr. Aflalo failed to disclose his many stock holdings, especially by not including sales of stock in Schedule D for any tax year other than 1978. Finally, petitioner failed to produce documents or otherwise cooperate with the IRS even after the threat of criminal prosecution ended. Neither petitioner nor his representatives provided documents or records to enable them to examine the tax years at issue. The Court of Appeals for the Ninth Circuit has held that "repeated understatements in successive years when coupled with other circumstances showing an intent to conceal or misstate taxable income present a basis on which the Tax Court may properly infer fraud." Furnish v. Commissioner, 262 F.2d 727, 728-729 (9th Cir. 1958) (citing Anderson v. Commissioner, 250 F.2d 242, 249-250 (5th Cir. 1957), affg. T.C. Memo. 1956-178). In the instant case, Mr. Aflalo has understated his income for *617 at least 4 consecutive years. Petitioner was unable to provide this Court with any books, records, or explanations as to why he failed to report many of his taxable transactions. Moreover, petitioner did not provide any explanation as to which method of accounting he used to compute his 1977 through 1980 taxable income. Mr. Aflalo operated businesses dealing in cash transactions; he should have known that, especially in a cash business, keeping records and financial journals is imperative. We infer that he failed to maintain accurate written records of cash operations to avoid paying income tax. Mr. Aflalo, relying on this Court's decision in Compton v. Commissioner, T.C. Memo. 1983-647, argues that, because his accountant, with whom the records were kept, is now deceased, we should find that fraud simply does not exist. In Compton, the taxpayer was in the logging and pulpwood business. After processing the timber, the taxpayer would sell it to several companies. Payments made to the taxpayer were deposited into his business checking account. The taxpayer in Compton regularly recorded the date and total amount of each deposit and provided *618 records to his accountant with which to prepare his tax returns. This Court found, inter alia, that the taxpayer volunteered his underreported income while under no threat of investigation, cooperated with the IRS during the audit, and was not aware that he underreported his income at the time his tax returns were filed. Consequently, this Court held that respondent did not meet her burden of proving fraud. Id.
Mr. Aflalo, unlike the taxpayer in Compton, repeatedly failed to cooperate with respondent, never volunteered the existence of underpayments, nor was he without knowledge of his underpayments. Moreover, given the "badges of fraud" detailed above, petitioner's lavish lifestyle, and the fact that Mr. Aflalo personally operated the delicatessens, he was in the best position to know exactly how much income to report and which records to give to his accountant. Accordingly, we hold that, with respect to petitioner Felix Aflalo, the deficiencies at issue were due to fraud. Additions to tax for negligence or disregard of rules or regulations -- Section 6653(a) imposes a 5-percent addition to tax if any part of the underpayment is due to negligence or intentional *619 disregard of rules or regulations. Respondent determined that Mrs. Aflalo is liable for the 5-percent addition to tax for negligence, and that, as an alternative to the additions to tax for fraud, Mr. Aflalo is liable for additions to tax for negligence. Mr. and Mrs. Aflalo filed joint income tax returns for each of the years at issue. With the benefit of filing a joint return, runs the burden of joint and several liability. Pesch v. Commissioner, 78 T.C. 100, 129 (1982). We have found Mr. Aflalo liable for the additions to tax for fraud pursuant to section 6653(b) for each tax year at issue. A taxpayer can only be held liable for the additions to tax for negligence for the part of an underpayment that is not attributable to fraud. Sec. 6653(a) and (b). Because we have found that Mr. Aflalo intended to defraud with respect to the entire underpayment, we cannot also find him liable for negligence.[7] If we were to hold Mrs. Aflalo liable for the additions to tax for negligence for the years at issue, then Mr. Aflalo would be jointly and severally liable for such negligence additions. This we cannot do; consequently, respondent's determination *620 of petitioners' negligence is not sustained. Alexander Shokai, Inc. v. Commissioner, T.C. Memo. 1992-41, affd. on other grounds 34 F.3d 1480 (9th Cir. 1994). [8]
The statute of limitations with respect to petitioners' 1977 and 1978 tax returns[9] -- Section 6501(c)(1) provides that "In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed * * * at any time." Because *621 the returns in question were fraudulently filed, we hold that the period of limitations imposed by section 6501(a) does not preclude respondent from assessing the deficiencies or the additions to tax otherwise sustained herein; any of their tax liabilities may be assessed without regard to any period of limitations. United States v. Powell, 379 U.S. 48, 53 (1964). Moreover, although Mrs. Aflalo was not found to have been fraudulent, the fraud of one joint filing spouse prevents the running of the statute of limitations as to the other. Stone v. Commissioner, 56 T.C. 213, 228 (1971). Decision will be entered under Rule 155. *622 Footnotes
1. Section references are to the Internal Revenue Code in effect for the years under consideration. Rule references are to this Court's Rules of Practice and Procedure.↩
2. The parties' stipulated facts and documents are included by means of this reference.↩
3. These dividends were excludable from income under sec. 116(a) and, thus, had no effect on petitioners' taxable income; however, these dividends were required to be disclosed.↩
4. See supra↩ note 3.
5. Petitioners' unreported income is net of personal exemptions of $ 4,500, $ 3,750, $ 4,000, and $ 5,000 for 1977, 1978, 1979, and 1980, respectively.↩
6. At trial, respondent conceded the fraud issue with respect to Mrs. Aflalo. Thus, for purposes of the addition to tax for fraud, we will address only Mr. Aflalo. References to petitioner in the singular are to Mr. Aflalo.↩
7. See also Suttie v. Commissioner, T.C. Memo. 1983-358, recognizing that, with respect to any portion of a deficiency, if the sec. 6653(b) additions to tax for fraud are sustained, then the sec. 6653(a)↩ additions to tax for negligence cannot be.
8. See Johnson v. Commissioner, T.C. Memo. 1993-227↩, holding that, when a joint return is filed, if one spouse is held liable for the additions to tax for fraud, then the other spouse cannot be held liable for the additions to tax for negligence.
9. Petitioners both executed Form 872, "Consent to Extend the Time to Assess Tax" and Form 872-A, "Special Consent to Extend the Time to Assess Tax", for the tax years 1979 and 1980, and, therefore, the statute of limitations is not at issue for these years.↩