Kenneth W. GUENTHER and Marva Guenther, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 88–7244.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 26, 1989.

Decided Nov. 14, 1989.

Glenn R. Kuykendall, Hanna, Murphy, Jensen & Holloway, Portland, Or., for petitioners-appellants.

Patricia M. Bowen, Dept. of Justice, Washington, D.C., for respondent-appellee.

Before ALARCON, BRUNETTI and O'SCANNLAIN, Circuit Judges.

## ORDER

We are sufficiently troubled by allegations that Commissioner's counsel improperly made an *ex parte* communication which prejudiced the trial judge's disposition of this case that we defer review of the merits and instead order this temporary remand.

## I

Kenneth and Marva Guenther (individually "Kenneth" and "Marva" and collectively "taxpayers") were husband and wife during 1978 and 1979 and filed joint income tax returns for both years.[1] In auditing these returns, the Internal Revenue Service ("IRS") uncovered alleged errors resulting in issuance of a Notice of Deficiency. Taxpayers filed a petition with the United States Tax Court seeking redetermination.

Sometime prior to trial in the tax court, Commissioner's counsel delivered *ex parte* a memorandum to the trial judge. Its contents have not been provided to this court, but the Commissioner concedes its existence. It is unclear how taxpayers discovered that such a document had been submitted, but just prior to trial they moved to compel disclosure. The tax court denied the motion on the second day of trial.

Reference to the *ex parte* memorandum is mentioned once briefly on the record at trial. The colloquy consists of the trial judge asking taxpayers' counsel whether he had formally filed a motion regarding the *ex parte* memorandum whereupon, hearing that counsel had done so, the judge stated that the motion "will be denied for reasons that we've discussed in chambers."

Counsel for the Commissioner eventually had a change of heart because some six weeks after trial, he provided taxpayers with a copy of the *ex parte* memorandum. The document is not found in the trial court record and was not tendered to this court by either party. Taxpayers then filed another motion, this one seeking an evidentiary hearing on the issues of the factual allegations made in the memorandum and imposition of sanctions on the Commissioner. Attached to this second motion were affidavits of taxpayers' daughter, Lisa Guenther, and taxpayers' counsel at trial, Gary DeFrang. The memorandum taxpayers submitted in support of the motion provides a brief outline of the alleged contents of the *ex parte* memorandum:

(1) Taxpayers might present fabricated evidence at trial and would change their story from that initially given to the Commissioner.

(2) Taxpayers had not complied with the discovery rules of the Court, had withheld evidence from the Commissioner and had presented new evidence on the eve of trial.

(3) Taxpayers' daughter would not honor a subpoena of the Court and did not care if the Court held her in contempt for failure to appear.

The memorandum in support of the motion also paraphrases the reasons the Commissioner allegedly gives in the *ex parte* memorandum for declining to serve taxpayers, as follows: "To protest [sic] his case, and to preclude [taxpayers] from disputing [the Commissioner's] allegations of fact...." In her affidavit, Lisa Guenther denies that she told counsel for Commissioner that she was unwilling to testify and denies she would not honor a subpoena, while in his affidavit, DeFrang asserts that he was cooperative and forthcoming with information the Commissioner sought during discovery.

The tax court denied the second motion summarily, as it had the first, with no written orders or explanations except a signature over the "DENIED" stamp on the first page.

---

1. Kenneth and Marva have since divorced.

On August 31, 1987, the tax court issued an opinion in which it sustained the Commissioner's findings of deficiency and also upheld the Commissioner's assessment of civil fraud penalties. The tax court did not refer to the *ex parte* memorandum in its 38-page tax court memorandum decision.

Taxpayers appeal. Aside from various challenges on the merits, taxpayers challenge on appeal the tax court's denial of their motions relating to the Commissioner's *ex parte* trial memorandum.

## II

Taxpayers allege that the submission *ex parte* of the Commissioner's trial memorandum to the tax court prejudiced their right to a fair trial, and thus violated their right to due process.

The due process clause of the fifth amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Notice and an opportunity to be heard are the hallmarks of procedural due process. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313-14, 70 S.Ct. 652, 656-57, 94 L.Ed. 865 (1950). To safeguard its essential features, the clause mandates neutrality in all adjudicative proceedings—civil as well as criminal. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182 (1980); *see also United States v. Thompson*, 827 F.2d 1254, 1258 (9th Cir. 1987) (court may not conduct itself in way that tends to significantly favor one party over the other "[e]ven in civil cases"). In entitling a person to an impartial and disinterested tribunal, due process safeguards against deprivations of life, liberty, or property based upon a distorted view of the facts. *Marshall*, 446 U.S. at 242, 100 S.Ct. at 1613. And, at bottom, its purpose is not simply to preserve the *reality* of fairness in all adjudicative proceedings, but also its *appearance. Id.*

Whether the Guenthers received due process depends on whether they had an opportunity to participate in determination of the relevant issues and on whether the *ex parte* memorandum unfairly prejudiced them. *Simer v. Rios*, 661 F.2d 655, 679 (7th Cir.1981), *cert. denied*, 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982). We note that the Tax Court Rules of Practice and Procedure prohibit *ex parte* communications. Tax Court Rule of Practice & Procedure 21(a), *reprinted at* notes following 26 U.S.C.A. 7453 (requiring all pleadings, etc., to be served on each party to the case). And recently, we made clear that absent some "compelling justification," *ex parte* communications will not be tolerated. *Thompson*, 827 F.2d at 1258-59.[2] Indeed, we stated that "ex parte proceedings are anathema in our system of justice." *Id.*

We are disturbed greatly that taxpayers did not have a chance to address the allegations made in the Commissioner's *ex parte* memorandum until long after the trial concluded. Even then, their only opportunity to be heard on the contents of the memorandum was in the form of a written motion. This is a fraud case and the *ex parte* memorandum allegedly impugned the character of the taxpayers prior to trial. Since the memorandum does not form a part of the record, we do not have sufficient knowledge to enable us to determine whether taxpayers might have been prejudiced. In any event, taxpayers have not had a meaningful opportunity to be heard on this matter.

We distinguish this case from a recent Third Circuit opinion in which the court held that the district court properly denied a request for an evidentiary hearing on what transpired during the government's *ex parte* application for a restraining order. *United States v. Skulsky*, 786 F.2d 558 (3rd Cir.1986). In *Skulsky*, the court found that a district court statement on the record provided affirmative evidence that the *ex parte* communication did not discuss the merits of the issues before the court, but instead was limited to a procedural matter. *Id.* at 561. Based on this rationale, the court ruled that the challenged *ex parte* contact could not have prejudiced the non-privy party. *Id.* In contrast, on the

---

2. We look to *Thompson* for guidance even though it is a criminal case, not only because it devotes part of its discussion to *ex parte* communications in general, but also because civil fraud is such a serious charge.

record before us, it is unclear what the *ex parte* memorandum contains. And, if the allegations be true, it appears certain that the Commissioner's memorandum discusses largely if not exclusively the substance—as opposed to the procedural posture—of the case.

### III

We must remand, therefore, to the tax court with instructions to conduct an evidentiary hearing. *See DeGrave v. United States,* 820 F.2d 870, 872 (7th Cir.1987) (remand ordered because case was not one in which nature of the *ex parte* communication was of record, and thus reviewing court could not determine whether defendant suffered prejudice). Specifically, the tax court shall make written findings concerning:

1. The full text of the *ex parte* communication;

2. The details of its delivery to the tax court including date of delivery, identity of the individual who prepared it, whether service was made on any other party or entity, and the date upon which a copy was first provided to petitioners;

3. The purpose of the Commissioner in submitting the *ex parte* memorandum to the tax court;

4. The reason the Commissioner failed to serve petitioners with the memorandum at the time it was submitted to the tax court;

5. The date upon which petitioners or their counsel first obtained a copy of the communication; and

6. Any other findings which the tax court may wish to make regarding the acceptance and consideration of the memorandum.

Such findings shall be filed with the clerk of this court whereupon the matter shall be returned to this panel for further proceedings.

REMANDED temporarily with instructions.[3]

3. Because we remand for further findings, we do not review at this juncture either the tax court's determination upholding the Commissioner's finding of deficiency with respect to a failure to report a capital gain on their 1979 return or the tax court's finding of fraud.