967 F.2d 590
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Randall S. ROBERTS, Val R. Jolley, F.D. Moeller, and William
Cooley, Plaintiffs, Appellees,
v.
Peter MacDONALD, Sr.; Defendant-Appellant,
v.
Honorable Robert YAZZIE, District Judge, Window Rock
District, Navajo Nation, Defendant, Appellee,
 No. 91-15166.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 14, 1992.*
Decided July 2, 1992.
 
 Before FLETCHER, POOLE and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Peter MacDonald, Sr. appeals the district court's refusal to allow him to file a counterclaim in an action brought against Judge Yazzie of the Navajo Tribal Court and MacDonald by Randall S. Roberts and other attorneys who had represented MacDonald. He also appeals the district court's dismissal of the action pursuant to a motion under Fed.R.Civ.P. 41(a)(2) by Yazzie and Roberts. Finally, he argues that he was denied due process because the district court held an ex parte proceeding at which he was not represented.
 
 
 3
 We affirm.
 
 BACKGROUND
 
 4
 Peter MacDonald, Sr. was chairman of the Navajo Nation Tribal Council. However, when it was revealed that he had apparently participated in the theft of a large sum of money from the Navajo Nation, he was placed on administrative leave, and the Tribal Council sought to take action against him. The Council ultimately contracted with attorneys in private practice to act as special prosecutors to bring an action against MacDonald in Navajo Nation Courts.
 
 
 5
 MacDonald hired the New Mexico firm of Roberts & Jolley to defend him.[1] MacDonald and the firm signed a contract in January, 1990. Shortly thereafter, the Navajo court decided the charges against MacDonald would be resolved in three separate trials. In view of the increased difficulty of the representation, MacDonald and the firm signed another agreement in April, 1990.
 
 
 6
 Roberts repeatedly sought the Navajo court's permission to withdraw from representation of MacDonald; however, permission was never granted. Finally, on the eve of trial, Roberts essentially abandoned representation of MacDonald. He filed an action in federal district court against Judge Yazzie of the Navajo court, seeking a temporary restraining order ("TRO") to compel the Navajo tribal court to allow him to withdraw from the representation. He argued that forcing him to continue representing MacDonald when he had no prospect of payment was a denial of due process, and sought to postpone MacDonald's trial and to be released from the representation. Although no relief was sought from MacDonald, MacDonald was added as a defendant because the plaintiffs believed he might be a necessary party under Fed.R.Civ.P. 19(a).
 
 
 7
 After Roberts abandoned the representation, the Navajo Court appointed Peter Breen of the Navajo Legal and Defender Office to represent MacDonald.
 
 
 8
 On September 24, 1990, the district court held a hearing on the TRO motion, and refused to grant a TRO. MacDonald alleges that at some point after this hearing the district court conducted an ex parte proceeding with the parties in Roberts' action, and that the court refused to allow MacDonald to be represented at this proceeding.
 
 
 9
 On September 25, 1990, Judge Yazzie, Roberts and representatives of the Navajo Tribal Council participated in a telephonic conference, in which they agreed to resolve their dispute. Judge Yazzie issued an order stating that the Navajo Nation would pay Roberts to represent MacDonald, and that the Nation "is entitled to collect the full amount of fees advanced to for [sic] defense counsel for Representation of Peter MacDonald, Sr., from any funds in the possession of the Navajo Nation which are due or which become due in the future to Peter MacDonald, Sr., including his deferred compensation."
 
 
 10
 On November 2, 1990, Roberts and Yazzie filed a joint motion to dismiss the action under Fed.R.Civ.P. 41(a)(2). On November 9, 1990, MacDonald filed a response to the motion, objecting to dismissal and requesting leave to file a counterclaim against Roberts and a crossclaim against the Navajo nation. The proposed crossclaim and counterclaim were not lodged with the court until December 14, 1990. On December 17, 1990, the district court denied the motion for leave to amend and granted the motion to dismiss.
 
 JURISDICTION
 
 11
 The district court had jurisdiction under 25 U.S.C. § 1303, 28 U.S.C. § 1332 and 28 U.S.C. § 2241. This court has jurisdiction under 28 U.S.C. § 1291.
 
 DISCUSSION
 
 12
 I. Denial of Motion for Leave to File a Counterclaim and Dismissal of Action
 
 
 13
 MacDonald argues that the district court erred in denying his motion for leave to file a counterclaim, and in dismissing Roberts' action against Yazzie.
 
 
 14
 A. Denial of Motion for Leave to File a Counterclaim
 
 
 15
 The district court's denial of leave to amend the pleadings is reviewed for abuse of discretion. Acri v. International Ass'n of Machinists, 781 F.2d 1393, 1396 (9th Cir.), cert. denied, 479 U.S. 816 (1986). In the interests of judicial economy, leave to amend is in general "liberally granted." Id. at 1399. However, in this case, at the time the motion to amend was made, Roberts and Yazzie had already moved to dismiss the action; the end of the litigation was imminent. MacDonald himself had been added as a defendant only because plaintiffs were concerned that he might be a necessary party under Fed.R.Civ.P. 19. Roberts never sought any relief from MacDonald. Thus, the district court did not abuse its discretion in denying MacDonald's belated motion for leave to amend.
 
 
 16
 Denial of leave to amend did not result in any injustice to MacDonald. If, as he argues, MacDonald has a late-maturing claim against Roberts, he can assert it in a new action; Fed.R.Civ.P. 13(a) makes compulsory only counterclaims the defendant has against the plaintiff at the time the defendant serves his responsive pleading.
 
 B. Dismissal of the Action
 
 17
 A district court's grant of a motion for voluntary dismissal under Fed.R.Civ.P. 41(a)(2) is reviewed for abuse of discretion. Eitel v. McCool, 782 F.2d 1470 (9th Cir.1986).
 
 
 18
 Here, the district court did not abuse its discretion in granting Roberts and Yazzie's motion to dismiss. The parties had settled their dispute. There was no longer any controversy.
 
 
 19
 Fed.R.Civ.P. 41(a)(1) did not bar dismissal. It provides: "If a counterclaim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court." MacDonald did not plead a counterclaim prior to service of the motion to dismiss. Even his motion for leave to amend which is not a "pleading" for purposes of this rule, see S.C. Johnson & Son, Inc. v. Boe, 187 F.Supp. 517, 520 (E.D.Pa.1960), was served after the motion to dismiss was filed.
 
 II. Ex Parte Hearing
 
 20
 MacDonald argues that the district court erred in holding an ex parte hearing on the case without notifying him. He states, "A couple of days [after the district court refused to issue a temporary restraining order], a telephone conference or hearing was held with the federal court judge, with all of the litigants and the federal public defenders present." According to MacDonald, when Peter Breen learned that the conference was going on, he called the judge's chambers, but was refused permission to participate in the conference. MacDonald argues that the other litigants, "emboldened" by the district court's willingness to conduct ex parte proceedings, proceeded to enter into a settlement without involving MacDonald.
 
 
 21
 Roberts denies such an ex parte conference took place. According to him, MacDonald must be referring to a telephonic conference the same district court judge conducted in regard to a TRO application by counsel for MacDonald's son (Peter MacDonald, Jr. who was apparently to stand trial with his father); that counsel also sought to postpone the trial and to withdraw from representation of MacDonald, Jr.
 
 
 22
 An ex parte hearing violates a litigant's right to due process if the litigant was thereby denied the "opportunity to participate in determination of the relevant issues" and suffered unfair prejudice. Guenther v. Commissioner of Internal Revenue, 889 F.2d 882 (9th Cir.1989). Guenther suggests when an appellant alleges that ex parte communications took place, the appellate court should remand to the district court for an evidentiary hearing on whether the ex parte conference took place and what was discussed at it. See id. at 885.
 
 
 23
 However, in this case, remand is not necessary because even if the conference took place it did not prejudice MacDonald. See United States v. Skulsky, 786 F.2d 558, 561 (3d Cir.1986) (distinguished in Guenther ) (district court did not err in refusing to hold evidentiary hearing where ex parte proceeding was limited to a discussion of procedural issues and could not have prejudiced defendants). MacDonald cannot, of course, state what discussions prejudicial to him might have taken place at an ex parte proceeding from which he was excluded. Yet no relief was sought from MacDonald in Roberts' suit. To the extent any settlement the parties made purported to affect any rights of MacDonald (for example to pay fees out of MacDonald's assets), it would be void. Indeed, MacDonald apparently is concerned not that the district court's conference directly affected his rights, but rather that it encouraged Roberts and the Tribal Council to conduct their own "ex parte" meeting, in which they agreed to settle the case. This claim of prejudice is unpersuasive.
 
 
 24
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Randall Roberts, Val. R. Jolley and two other attorneys are the appellees in this appeal, and will be referred to as "Roberts."