ORDER ACCORDINGLY.

**In re Jacob FRAIDIN, Debtor.**

**Michael G. Rinn, Chapter 7 Trustee, Plaintiff,**

v.

**Jacob Fraidin, Defendant.**

**Bankruptcy No. 92–52338–JS. Adversary No. 97–5223–JS.**

United States Bankruptcy Court, D. Maryland.

Sept. 30, 2003.

Jacob Fraidin, Baltimore, MD, pro se.

Paul–Michael Justin Sweeney, Linowes & Blocher, L.L.P., Silver Spring, MD, for trustee.

Michael G. Rinn, Esquire, Cockeysville, MD, Chapter 7 Trustee.

## MEMORANDUM OPINION UPON RE-MAND FROM THE U.S. COURT OF APPEALS FOR THE FOURTH CIRCUIT

JAMES F. SCHNEIDER, Chief Judge.

On August 9, 1991, Jacob Fraidin, the Chapter 7 debtor, filed a voluntary Chapter 11 bankruptcy petition in the U.S. Bankruptcy Court for the District of Columbia, which was later transferred to this district by order [Teel, B.J.], dated March 17, 1992. On December 29, 1993, this Court ordered the appointment of a Chapter 11 trustee.[1]

**1.** In an unreported opinion in the case of *Fraidin v. Weitzman (In re Fraidin)*, 1994 WL 687306, decided December 9, 1994, the Fourth Circuit Court of Appeals made the following statements in upholding this Court's appointment of a Chapter 11 trustee:

After Fraidin filed for protection under Chapter 11 of the Bankruptcy Code, two creditors with outstanding judgments against Fraidin moved for the appointment of a trustee. At the conclusion of a two-day hearing, the bankruptcy court stated that it was appointing a trustee because it had "absolutely no confidence in the debtor in terms of his capacity to honestly administer his own Chapter 11 bankruptcy."

The bankruptcy court based its decision on what it called "a multitude of factors," one of which was pre-petition dishonesty. Fraidin is a convicted felon, having been found guilty of theft while acting as a foreclosure trustee. *See Fraidin v. State*, 85 Md.App. 231, 583 A.2d 1065, *cert. denied*, 322 Md. 614, 589 A.2d 57 (1991). [Footnote: The Maryland Court of Special Appeals wrote: "The permissible picture emerges of Fraidin as an extremely clever manipulator of complicated commercial transactions who . . . at least had avarice in his heart. To feed that avarice, he created at-times labyrinthine confusion. He then sought to exploit that confusion to his own advantage." *Fraidin*, 583 A.2d at 1081.] More recently, Fraidin was found liable in a civil action for tortious interference with contract and civil conspiracy and was ordered to pay $1.5 million in punitive damages. Also, the bankruptcy judge found that Fraidin had used aliases as late as 1986, but did not disclose those names as required on the bankruptcy petition. Moreover, the bankruptcy court found that Fraidin had no credibility, given his "evasive, self-serving, unclear, and obviously not forthcoming" testimony during the hearing . . .

The decision of whether a debtor's conduct justifies the appointment of a trustee is a matter committed to the discretion of the lower courts. *See Committee of Dalkon Shield Claimants v. A.H. Robins Co.*, 828 F.2d 239, 242 (4th Cir.1987). Here, the decision was made in the first instance by the bankruptcy court and affirmed by the district court. This court, as a second court of review, considers the decision of the bankruptcy court under the same standards that apply to the district court. *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir.1988). Thus, the

On April 13, 1994, the U.S. Trustee appointed Deborah Hunt Devan, Esquire, as Chapter 11 trustee. On April 11, 1995, this Court converted the case to a Chapter 7 proceeding. On April 12, 1995 Michael G. Rinn, Esquire, was appointed Chapter 7 trustee.[2]

On April 9, 1997, the instant complaint was filed by Michael G. Rinn, the Chapter 7 trustee against the debtor, Jacob Fraidin, to avoid and recover fraudulent transfers, postpetition transfers and the turnover of property. On May 20, 1997, a scheduling conference was held at which time counsel for the plaintiff appeared but the defendant did not. On May 22, 1997, the defendant filed a motion to dismiss. On May 1, 1998, the defendant filed a motion to disqualify plaintiff's counsel. The motion to disqualify was denied by order dated May 19, 1998 [Teel, B.J.]. By order entered July 21, 1998, the motion to dismiss was denied, the plaintiff was provided 90 days to conduct discovery of the

defendant and the plaintiff was ordered to file a more definite statement within 30 days.

On September 9, 1998, the trustee filed a motion to compel discovery and to deem facts admitted by Fraidin. On November 16, 1998, the plaintiff filed a second motion to compel discovery.

On April 14, 1999, a hearing was held on the motions to compel discovery and they were granted by Judge Keir by order [P. 34] entered on April 29, 1999. On May 14, 1999, the plaintiff filed a third motion to compel discovery. On May 26, 1999, the plaintiff filed a fourth motion to compel discovery. A telephonic hearing was conducted by this Court while the deposition was in progress during which Mr. Fraidin had refused to answer certain questions put to him by plaintiff's counsel. This Court overruled Mr. Fraidin's objections to the questions and ordered him to answer them. By order [P. 39] entered

---

question here is not whether this court would have appointed a trustee had it been deciding the question in the first instance, but whether the bankruptcy court abused its discretion in appointing a trustee. Findings of fact by the bankruptcy court are reviewable by this court only for clear error and legal questions are subject to de novo review. *Canal Corp. v. Finnman (In re Johnson)*, 960 F.2d 396, 399 (4th Cir.1992); Bankr.R. 8013....

We conclude that the findings of the bankruptcy court—that Fraidin had engaged in a prolonged pattern of dishonest conduct and had no credibility at the hearing—are supported by the record. Section 1104(a)(1) expressly provides that dishonesty, whether before or after the filing of the bankruptcy petition, justifies the appointment of a trustee. The bankruptcy court considered Fraidin's evidence of his proper conduct regarding his bankruptcy case, but nonetheless found that his pattern of dishonesty justified the appointment of a trustee. We find no abuse of discretion and accordingly affirm the order of the district court.

*Id.*

2. The Fourth Circuit affirmed the conversion to Chapter 7 in an unreported opinion styled *Fraidin v. Weitzman (In re Fraidin)*, 1997 WL 153826, decided April 3, 1997, in which it held:

In order to convert a case from Chapter 11 to Chapter 7, a bankruptcy court must first determine that there is cause for the conversion. 11 U.S.C. § 1112(b); *In re Superior Siding & Window, Inc.*, 14 F.3d 240, 242–43 (4th Cir.1994)...

The bankruptcy court relied upon Fraidin's inability to effectuate a plan as its basis for ordering conversion, and the record substantiates that finding. The trustee explained at length that Fraidin would not be able to obtain confirmation of a reorganization plan. Indeed, Fraidin has never submitted a plan for approval. The bankruptcy court did not abuse its discretion in converting the case to a Chapter 7 proceeding.

*Id.*

June 4, 1999, this Court reduced to written order its oral directive to the debtor to answer the questions posed at the deposition in writing with 20 days, upon penalty of having the instant complaint granted against him. The debtor refused to respond to discovery requests, including refusing to attend duly scheduled depositions. When he did attend such a deposition, he improperly declined to answer numerous questions that this Court commanded him to answer. As a result, on January 8, 2001, this Court entered an order granting default judgement [P. 42], upon the plaintiff's Suggestion of Contempt Under Order Directing Jacob Fraidin To Answer All Questions Posed At Depositions. On March 14, 2001, this Court conducted a hearing on the trustee's damage, and determined that the trustee's claim against the defendant should be allowed in the amount of $1,659,077, plus attorney's fees and costs of $4,179.00, plus interest at the rate of 5.58% from April 9, 1997. On April 4, 2001, a judgment [P. 50] was entered against the defendant in that amount.

This matter is now before the Court upon remand from the reversal of that judgment by the U.S. Court of Appeals for the Fourth Circuit in the unreported opinion of *Fraidin v. Rinn (In re Fraidin)*, 34 Fed.Appx. 932, 2002 WL 1025092, decided May 22, 2002. The reason for the reversal was that after the trustee's complaint was granted against the debtor upon the debtor's contemptuous refusal to respond to discovery,[3] this Court held a hearing on the plaintiff's motion, denominated *"ex parte* motion for damages," which the debtor failed to attend. The reversal was based upon the failure of this Court to give Fraidin an opportunity to produce evidence on the issue of damages, an anomalous result because the reason the complaint was granted against him was his refusal to provide discovery.[4]

---

**3.** The propriety of the January 5, 2001, order, that entered the default judgment against Fraidin, was not the subject of the appeal to the Fourth Circuit because his appeal from that order was dismissed with prejudice by the district court and the dismissal was not appealed further.

**4.** The Fourth Circuit explained its rationale for the decision:

Following the entry of default judgment, the bankruptcy court is not required to hold a hearing to determine the amount of damages. *See* Fed. R. Bankr.P. 7055 (adopting Fed.R.Civ.P. 55 in bankruptcy court adversary proceedings); *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir.1997); *James v. Frame*, 6 F.3d 307, 310 (5th Cir.1993). However, if the court does hold a hearing, it must provide the parties with an opportunity to be heard. *See Transatlantic Marine Claims Agency*, 109 F.3d at 111 (court could not merely accept plaintiff's unsupported statement of damages). Rather, "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). An *ex parte* hearing, such as that conducted by the bankruptcy court, violates a litigant's right to due process if the litigant was thereby denied the "opportunity to participate in determination of the relevant issues" and suffered unfair prejudice. *Guenther v. Comm'r*, 889 F.2d 882, 884 (9th Cir.1989).

Here, although Fraidin received notice of the scheduled hearing to determine the amount of damages, the notice clearly stated that the hearing was to be *"ex parte."* Thus, Fraidin was denied the opportunity to challenge the Trustee's evidence as to the amount of damages, and he was thereby prejudiced. *See id.* Because he was not afforded an opportunity to present contrary evidence, cross-examine the Trustee's witnesses and evidence, or challenge the determination or reasonableness of the attor-

After remand, this Court conducted a second hearing on damages on January 13–14, 2003, to which the debtor was invited to attend and which he in fact did attend. This second hearing has now permitted Fraidin to produce the very evidence he presumably withheld from the trustee in an attempt to dispute the trustee's claim for damages. It should also be noted that the original hearing on remand scheduled by this Court for November 6, 2002, was continued at the debtor's request so that he might obtain legal counsel to represent him. When the hearing was called on January 13, 2003, the debtor appeared without counsel and requested another postponement so that he might obtain subpoenas for the testimony of various representatives of the Department of Justice, which this Court denied. Fraidin claimed that he wanted an accounting from the trustee for funds Fraidin collected and turned over to him. However, the trustee did not claim that those collections were not turned over to him. His claim for damages was based upon four discrete categories of funds that were neither turned over to the trustee nor accounted for by Fraidin. In denying the debtor's motion for a continuance, this Court noted on the record that the debtor had 67 days, from the date of the November 6, 2002, hearing to subpoena these witnesses, but did not do so under the very eve of the January 13, 2003, hearing.

The defendant attempted to use the hearing on damages to retry the complaint, including his liability which had already been established, and raised all manner of irrelevant and argumentative issues. Nevertheless, this Court attempted to keep the damages issue the focus of the two-day hearing on remand by constantly reminding him that his liability to the trustee was not at issue, only the amount of damages based on that liability.

The trustee, Michael G. Rinn, testified as to the basis for his damage claim in the amount of $1,659,511, which the trustee claimed is unaccounted for by the debtor and which is missing from the estate. Mr. Rinn testified that he reviewed the books and records of the estate, including the debtor's business records, exhibits from other proceedings in the State court and the bankruptcy court in this case, including transcripts of hearings, and that he conducted an independent investigation of the debtor and his business dealings upon which the instant complaint was based. The amount of damages has four separate components: (1) cash in the amount of $595,435, which the debtor scheduled under penalties of perjury as cash on deposit when the bankruptcy case was filed; (2) funds received by the debtor from the decedent's estate of the debtor's mother in the amount of $289,575, and never accounted for by the debtor; (3) receipts from Barclay Mortgage Company in the amount of $391,426; and (4) the debtor's 1989–90 interest income reported on his tax returns in the amount of $467,191. These figures total $1,743,627, against which the trustee credited the debtor the amount of $84,115, representing monies received by the estate attributable to the four categories, leaving a net amount owed to the debtor's bankruptcy estate of $1,659,511. In addition, the trustee testified that he is indebted to his counsel for services rendered incident to this complaint in the amount of $4,179. The trustee's testimony was corroborated

---

neys' fees awarded, we find that Fraidin was denied due process. *See Mullane,* 339 U.S. at 314, 70 S.Ct. 652; *see also Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)

("Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record."). 34 Fed.Appx. 932.

by documentary evidence submitted at the hearing, including trustee's counsel's affidavit of counsel fees, copies of schedules, certificates of deposit, T-bill rates, monthly operating reports, and records of the receivership obtained against the debtor's company, Pacific Mortgage Company.[5] Cross-examination of the trustee by the debtor did not cause the trustee to alter his direct testimony as to the amount of damages. The trustee did not deny that he received more than $84,000 that the debtor had collected from various other sources not attributable to any of the four categories that the trustee previously enumerated. He disputed Fraidin's claim that he ever received more than $300,000 from Fraidin. He did acknowledge the turnover of approximately $84,000 by Fraidin at the beginning of the case that was attributable to the four categories.

Andre Weitzman, Esquire, testified regarding his postjudgment collection efforts against Fraidin in certain State court litigation to the effect that Fraidin never produced bank records. The witness testified that he was appointed substitute personal representative for the decedent's estate of Corinne Fraidin, the debtor's mother, and that Fraidin received a distribution from that estate in the amount of $289,575 on April 3, 1991. The bankruptcy estate never received any payments from Fraidin from any of those funds, although Weitzman received $102,552 that he recovered against Fraidin's sister from a judgment. He determined the amount Fraidin received by examining cancelled checks from the decedent's estate account.

Fraidin testified that he opened debtor in possession accounts on the advice of counsel at the outset of the case. The monies were invested in high-yield mortgage accounts, not in certificates of deposit. Each month, according to him, operating reports were duly filed with the U.S. Trustee. He continued in control of his financial affairs until the appointment of the Chapter 11 trustee. With her approval, he continued to collect all monies due from his various mortgages. When the case was converted to Chapter 7 and the trustee was appointed, Fraidin continued to make collections and turn them over to the him. Fraidin claimed he did everything the trustee ordered him to do. He attempted to offer into evidence a number of letters that amounted to self-serving declarations, which were excluded. However, very tellingly, Fraidin declined to testify under oath that what he had said in his opening was truthful. He acknowledged that he has not filed income tax returns for himself and his various business entities and could not remember the last occasion when he did so.

The trustee's counsel cross-examined Fraidin about his failure to provide an-

5. The following exhibits were admitted into evidence at the hearing:
Trustee's Exhibit No. 1: Fraidin's bankruptcy schedules that he filed under penalty of perjury; Trustee's Exhibit No. 2: an exemplified copy of the final judgment order entered in *Rinn v. Pacific Mortgage Inv. Group,* Adv. Pro. No. 97–5511, which enjoined the debtor and his agents from transferring and concealing assets of the debtor's various business entities and appointing Mr. Rinn as their receiver; Trustee's Exhibit No. 3: an exemplified copy of the order of this court that substantively consolidated the receivership over the debtor's business entities with the debtor's bankruptcy case; Trustee's Exhibit No. 4: Money rates published in *The Wall Street Journal* dated January 3, 1989; Trustee's Exhibit No. 5: Money rates published in *The Wall Street Journal* dated Dec 29, 1998; Trustee's Exhibit No. 6; a binder containing monthly operating reports filed by Fraidin during the pendency of his Chapter 11 proceeding; and Trustee's Exhibit No. 7: a verified statement of the trustee's attorney's fees, pursuant to the January 8, 2001, order of this Court, in the amount of $4,179.

swers to questions at his deposition on May 22, 1999, and read into the record numerous questions that Fraidin refused to answer and account for estate funds and proceeds.

This Court is satisfied from all of the testimony and documentary evidence adduced at the two-day hearing that the debtor is indebted to the Chapter 7 trustee on behalf of the bankruptcy estate in the amount of $1,659,077, plus attorney's fees and costs of $4,179.00, plus interest at the rate of 5.58% from April 9, 1997.

Wherefore, having held a hearing on the trustee's request for damages, this Court has determined that a judgment will be entered against the defendant in that amount.

ORDER ACCORDINGLY.

### *ORDER GRANTING JUDGMENT TO THE PLAINTIFF UPON REMAND FROM THE U.S. COURT OF APPEALS FOR THE FOURTH CIRCUIT*

Based upon the memorandum opinion filed simultaneously herewith, this Court having held a second hearing on damages pursuant to the mandate of the Fourth Circuit Court of Appeals in the case of *Fraidin v. Rinn (In re Fraidin)*, unreported opinion, 34 Fed.Appx. 932, 2002 WL 1025092, decided May 22, 2002, judgment is hereby rendered in favor of the plaintiff, Michael G. Rinn, Trustee, against the defendant, Jacob Fraidin, in the amount of amount of One Million, Six Hundred Fifty–Nine Dollars and seventy-seven cents ($1,659,077), plus attorney's fees and costs in the amount of Four Thousand One Hundred Seventy–Nine Dollars ($4,179.00), plus interest at the rate of 5.58% from April 9, 1997.

